128 Cal.App.3d 1032 (1982)
181 Cal. Rptr. 17
PAINTERS DISTRICT COUNCIL NO. 33, Plaintiff and Respondent,
v.
GREGORY T. MOEN, Defendant and Appellant.
Docket No. 50995.
Court of Appeals of California, First District, Division One.
February 23, 1982.
*1035 COUNSEL
Hugo N. Gerstl and Gerstl & Gorman for Defendant and Appellant.
Robert E. Jesinger, Kathryn A. Sure and Brundage, Davis, Frommer & Jesinger for Plaintiff and Respondent.
OPINION
NEWSOM, J.
This is an appeal from an order confirming an arbitration award (Code Civ. Proc., § 1285) rendered by a joint adjustment board (hereafter the board) under authority of a collective bargaining agreement (hereafter agreement).
Respondent is an unincorporated association of various local painters' unions which exists to provide a forum for employment grievances and disputes. Pursuant to the agreement, certain grievances against appellant[1] were submitted to the board, which found him guilty of violations and imposed fines.
*1036 Appellant argues that the proceeding which resulted in a decision adverse to him was not a "real arbitration," and for that reason is not entitled to confirmation pursuant to Code of Civil Procedure section 1285 et seq.
As evidence of the nonbinding character of the hearing, appellant points out that the agreement does not mention the term "arbitration" or characterize the proceeding as such. We pause to note at the inception, however, that the failure of the agreement to identify the grievance procedure as "arbitration" is not fatal to its use as a binding mechanism for resolving disputes between the parties. (Truck Drivers Union v. Riss & Co. (1963) 372 U.S. 517, 519 [9 L.Ed.2d 918, 920, 83 S.Ct. 789]; Silva v. Mercier (1949) 33 Cal.2d 704, 708-709 [204 P.2d 609]; Sanserino v. Shamberger (1966) 245 Cal. App.2d 630, 636 [54 Cal. Rptr. 206].)
More important is the nature and intended effect of the proceeding.
The agreement pursuant to which the joint adjustment board acted in the present case contemplates that a final and binding determination be made by the board: it specifies that the board will be comprised of an equal number of contractor representatives and union members; if a grievance arises, the resolution procedure calls for a meeting between the contractor and a union representative, which, if unsuccessful in adjusting the grievance, is followed by referral "to the [board] for resolution and decision"; and in the event the board fails to reach a decision, a neutral arbitrator is selected to render a "final and binding decision."
(1) The joint adjustment board designed by the agreement to hear the instant dispute is a recognized entity for the definite settlement of grievances between parties. (Cortez v. Cal. Motor Express Co. (1964) *1037 226 Cal. App.2d 257, 261 [38 Cal. Rptr. 29].) Moreover, correspondence between the parties following the award confirms that the board's decision was contemplated as a final ruling on the matter. That the procedure is not denominated as an "arbitration" is, therefore, of no consequence, nor is it significant that the procedure chosen did not provide for the forms contemplated by statutory arbitration  such as, representation by counsel, subpoenaed witnesses and documents, sworn testimony and cross-examination. (Code Civ. Proc., §§ 1282, 1282.2.) The parties to an arbitration agreement are free to specify an arbitration procedure which differs from statutory requirements. (O'Malley v. Wilshire Oil Co. (1963) 59 Cal.2d 482, 490-491 [30 Cal. Rptr. 452, 381 P.2d 188]; MacDonald v. San Diego State University (1980) 111 Cal. App.3d 67, 76 [168 Cal. Rptr. 392].) We accordingly conclude that the agreement provided a binding procedure for the resolution of the instant dispute. (Silva v. Mercier, supra, 33 Cal.2d 704, 709; Mitchum, Jones & Templeton, Inc. v. Chronis (1977) 72 Cal. App.3d 596, 600-601 [140 Cal. Rptr. 160].)
(2a) Appellant argues next that the agreement ought not to be given legal sanction because it is a contract of adhesion which provides for a partial, inchoate arbitration, thus denying him statutory and due process rights, particularly the right to counsel.
(3) In resolving this issue, we are guided by the rule that, contractual arbitration being a favored method of resolving disputes, every intendment will be indulged to give effect to such proceedings. (Airfloor Co. of California, Inc. v. Regents of University of California (1978) 84 Cal. App.3d 1004, 1007 [149 Cal. Rptr. 130]; Lehto v. Underground Constr. Co. (1977) 69 Cal. App.3d 933, 939 [138 Cal. Rptr. 419]; Horn v. Gurewitz (1968) 261 Cal. App.2d 255, 261 [67 Cal. Rptr. 791].) And, since the matter is one of contract, the parties to an arbitration agreement are free to delineate the governing procedure; judicial review is thus strictly limited to a determination of whether the party resisting arbitration in fact agreed to arbitrate. (Charles J. Rounds Co. v. Joint Council of Teamsters No. 42 (1971) 4 Cal.3d 888, 892 [95 Cal. Rptr. 53, 484 P.2d 1397]; O'Malley v. Wilshire Oil Co. (1963) 59 Cal.2d 482, 490-491 [30 Cal. Rptr. 452, 381 P.2d 188]; Code Civ. Proc., §§ 1285-1288; Lehto v. Underground Constr. Co., supra, 69 Cal. App.3d at p. 939.)[2]
*1038 (2b) Relying upon the recent decision of the California Supreme Court in Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807 [171 Cal. Rptr. 604, 623 P.2d 165], appellant submits that the underlying agreement here constitutes an adhesion contract which fails to provide for a fair procedure, and consequently should be denied judicial enforcement. In Graham, a concert promoter of experience and stature and a music performer of equal renown entered into standard-form union concert promotion contracts, each of which contained a clause calling for arbitration by the union of all disputes arising thereunder. Without benefit of a hearing, the executive board of the union issued a decision awarding contractual damages to the performer. A hearing was subsequently held before a single referee, a former executive and long-time union member, and the award of the executive board was ultimately confirmed.
Despite the obvious sophistication of the concert promoter, the standard-form union agreement was found by the court to be an adhesion contract, based primarily upon evidence that a promoter seeking to sign an agreement with any concert artist was required to sign a union contract  union members are not permitted to sign any other  which includes nonnegotiable provisions for arbitration. (Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d 807, 818-819.) The court recognized that in structuring procedures for the resolution of disputes the parties have "considerable leeway" to employ modes of arbitration which "vary to some extent from the dead center of `neutrality'" (id., at p. 825), but declared that "we at the same time must insist  and most especially in circumstances smacking of adhesion  that certain `minimum levels of integrity' be achieved if the arrangement in question is to pass judicial muster." (Ibid.)
Because of the identity of interest between the union and its affected member, the court ruled: "... we think it must be concluded that a *1039 contractual provision designating the union of one of the parties to the contract as the arbitrator of all disputes arising thereunder  including those concerning the compensation due under the contract  does not achieve the `minimum levels of integrity' which we must demand of a contractually structured substitute for judicial proceedings. Such a provision, being inimical to the concept of arbitration as we understand it, would be denied enforcement in any circumstances; clearly it cannot stand in a case which, like that before us, requires the careful and searching scrutiny appropriate to a contract with manifestly adhesive characteristics." (Id., at p. 828.)[3]
Appellant finds the present case factually analogous to Graham and contends that the instant agreement is a standard-form contract offered on a "take-it-or-leave-it basis" by a party, the union, with superior bargaining strength. He complains that he was unable to bargain over terms, including those governing the procedure for resolution of disputes.
(4) "The term `contract of adhesion': `"... refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract due to the disparity in bargaining power between the draftsman and the second party must be accepted or rejected by the second party on a `take it or leave it' basis without opportunity for bargaining and under such conditions that the `adherer' cannot obtain the desired product or service save by acquiescing in the form agreement."' (Lomanto v. Bank of America, 22 Cal. App.3d 663, *1040 668....)" (Gamer v. duPont Glore Forgan, Inc. (1976) 65 Cal. App.3d 280, 285 [135 Cal. Rptr. 230].)
(2c) It is true that, as in Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d 807, 818-819, the record here discloses that the standard-form agreement between the union and appellant was offered on a nonnegotiable basis, and that the union clearly possessed superior bargaining strength. Moreover, appellant, as a small contractor, was in no position to reject the agreement; practically speaking a nonunion job would undoubtedly have been difficult to obtain. (Wheeler v. St. Joseph Hospital (1976) 63 Cal. App.3d 345, 368-369 [133 Cal. Rptr. 775, 84 A.L.R.3d 343].)
(5) However, as noted in Graham, supra, "a contract of adhesion is fully enforceable according to its terms." (28 Cal.3d 807, 819.) It is only when the contract is (1) contrary to the reasonable expectations of the "adhering party" or (2) is "unduly oppressive or unconscionable," that it will not be enforced. (Id., at p. 820.) (2d) Here, neither of those factors is present. The arbitrator is not the union, and the agreement provides for a joint union-contractor committee, with equal representation from both sides. Arbitration panels of such composition have consistently been upheld in the past. (See Tipton v. Systron Donner Corp. (1979) 99 Cal. App.3d 501, 505-506 [160 Cal. Rptr. 303]; International Brotherhood of Electrical Workers v. Silva (1979) 96 Cal. App.3d 751, 758-759 [158 Cal. Rptr. 78]; Arrieta v. Paine, Webber, Jackson & Curtis, Inc. (1976) 59 Cal. App.3d 322, 329-330 [130 Cal. Rptr. 534].) (6) There is no requirement that arbitrators appointed by the parties or pursuant to an agreement be neutral or impartial, as long as equal representation is given to each side of the dispute. (Tipton v. Systron Donner Corp., supra, 99 Cal. App.3d at pp. 505-506.)
(2e) Neither has appellant made any showing of actual bias, unfairness, misconduct, or impropriety on the part of any of the arbitrators, and none can be inferred from the record. In Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d 807, the evidence revealed partiality; here, no such showing has been made. We note that appellant failed to move to vacate the award or assert any claim of bias within the time (100 days after service of award) prescribed by statute (Code Civ. Proc., § 1288), and in response to respondent's petition to confirm the arbitration award submitted no declarations or other factual showing of actual bias or unfairness.
*1041 The burden is on the party challenging an arbitration award to establish error or impropriety. (Rodrigues v. Keller (1980) 113 Cal. App.3d 838, 842 [170 Cal. Rptr. 349]; Horn v. Gurewitz, supra, 261 Cal. App.2d 255, 261.) In the absence of such a showing there is no cause to deny confirmation of the award. (Tipton v. Systron Donner Corp., supra, 99 Cal. App.3d 501, 561; Johnston v. Security Ins. Co. (1970) 6 Cal. App.3d 839, 841-842 [86 Cal. Rptr. 133].) Given the fair composition of the board  equal representation of both union and contractor interests  and in the absence of any indication of bias, we conclude that confirmation cannot be denied on grounds of adhesion. (Arrieta v. Paine, Webber, Jackson & Curtis, Inc., supra, 59 Cal. App.3d 322, 330.)[4]
Neither can we agree with appellant that the agreement is inherently "unfair" or "oppressive." As often noted in such cases, two competing policies conflict: a strong judicial preference for arbitration and an equally strong concern for the rights of consumers against whom unexpected or oppressive provisions of standardized contracts are sought to be enforced. (Wheeler v. St. Joseph Hospital, supra, 63 Cal. App.3d 345, 355; Spence v. Omnibus Industries (1975) 44 Cal. App.3d 970, 974 [119 Cal. Rptr. 171].) In our view, a balancing of these competing policies favors confirmation of the instant award. While the contract providing for arbitration may be one of adhesion, the procedure for resolution of disputes arising under it, in contrast to that challenged in Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d 807, is reasonable and was fairly concluded. (Madden v. Kaiser Foundation Hospitals (1976) 17 Cal.3d 699, 711-712 [131 Cal. Rptr. 882, 552 P.2d 1178]; Vernon v. Drexel Burnham & Co. (1975) 52 Cal. App.3d 706, 715 [125 Cal. Rptr. 147]; Spence v. Omnibus Industries, supra, 44 Cal. App.3d at p. 974.)
Appellant claims, for the first time in his closing brief,[5] that the trial court failed to issue findings of fact and conclusions of law following timely request. (Cal. Rules of Court, rule 232.)
The record shows that appellant requested findings and conclusions on August 1, 1980, within the required 10 days of the trial court's order confirming the arbitration award. Thereafter, the trial court simply *1042 filed the judgment; no findings of fact or conclusions of law were issued.
(7) Judicial proceedings pertaining to arbitration awards, as in all other actions pursuant to Code of Civil Procedure section 1291,[6] require that the trial court issue findings of fact and conclusions of law if requested. (Johnston v. Security Ins. Co., supra, 6 Cal. App.3d 839, 844.) It is also well-settled, however, that section 1291 must be read in light of section 632 of the Code of Civil Procedure, which requires such findings only "upon the trial of a question of fact." (Charlton Co. v. Aerfab Corp. (1976) 56 Cal. App.3d 808, 811 [128 Cal. Rptr. 878]; Allstate Ins. Co. v. Orlando (1968) 262 Cal. App.2d 858, 867 [69 Cal. Rptr. 702].) Where the issue is one of law only, findings of fact are not required. (Ibid.)
Here, no declarations or other evidence were presented to the trial court. The ruling confirming the award was based only on the pleadings and exhibits thereto. While we agree that specific findings would have added clarity to the trial court's decision, the issues presented were essentially legal in nature and we thus find no cause to reverse the judgment for lack of findings. (Johnston v. Security Ins. Co., supra, 6 Cal. App.3d 839, 845.)
The order is affirmed.
Racanelli, P.J., and Martin, J.,[*] concurred.
NOTES
[1] The grievances involved violations of the agreement: performance of work on a "black Friday," and two charges of violating spray regulations.

The pertinent terms of the agreement which provide for the grievance procedure are as follows:
"Article 4. Peninsula Area Joint Committee, Section 1. During the term of this agreement, there shall be established by the signatories hereto, the committee known as the Peninsula Area Joint Committee. [¶] Section 2. This Committee shall consist of an equal number of voting members, one-half representing the union and one-half representing the contractor's associations and shall be selected by the parties to this agreement as set forth below. [¶] Section 3.... Employer representatives and one alternate representing each association, shall be selected from the employer associations. Employer representatives will not be Union members. [¶] Section 4. The Union members shall be designated by District Council of Painters # 33. [¶] Section 5. Peninsula Area Joint Committee is authorized to adjust disputes and grievances that may arise in its jurisdictional area."
[2] Code of Civil Procedure section 1286.2 sets forth the following limited grounds upon which a court may vacate an arbitration award: "(a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

A petition to vacate or correct an award must be served and filed not later than 100 days after the date of service of the signed copy of the award, in order to require that available grounds be urged promptly to ensure finality. (Code Civ. Proc., § 1288; Lehto v. Underground Constr. Co., supra, 69 Cal. App.3d 933, 940.)
[3] The court in Graham also noted: "There is we think a second basis, related to that just discussed, for denying enforcement on such grounds. The fact that an entity or body designated by contract to act as arbitrator of contractual disputes is one capable of acting as a tribunal  i.e., in the sense of hearing a dispute and deciding fairly and rationally on the basis of what it has heard  is of little consequence if it proceeds under rules which deny a party the fair opportunity to present his side of the dispute. Thus, if a party resisting arbitration can show that the rules under which arbitration is to proceed will operate to deprive him of what we in other contexts have termed the common law right of fair procedure, the agreement to arbitrate should not be enforced. In this respect it is well to reiterate, adapting it to the present context, what we said in a seminal case on this subject. `The common law requirement of a fair procedure does not compel formal proceedings with all the embellishments of a court trial [citation], nor adherence to a single mode of process. It may be satisfied by any one of a variety of procedures which afford a fair opportunity for [a disputant] to present his position. As such, this court should not attempt to fix a rigid procedure that must invariably be observed.' [Citation.] When it can be demonstrated, however, that the clear effect of the established procedure of the arbitrator will be to deny the resisting party a fair opportunity to present his position, the court should refuse to compel arbitration." (28 Cal.3d 807, 825-826.)
[4] We note additionally that the agreement is conspicuous, and the procedure for resolving disputes discussed in a pamphlet of wide circulation.
[5] We disapprove of appellant's practice of raising a new point in his closing brief (Johnston v. Security Ins. Co., supra, 6 Cal. App.3d 839, 844, fn. 3), but will consider the issue in the interests of justice.
[6] Section 1291 provides: "Findings of fact and conclusions of law shall be made by the court whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title."
[*] Assigned by the Chairperson of the Judicial Council.