[No. A024339. First Dist., Div. Five. Feb. 22, 1985.]

TITAN GROUP, INC., Plaintiff and Appellant, v.
SONOMA VALLEY COUNTY SANITATION DISTRICT,
Defendant and Respondent.

COUNSEL

Richard A. Holderness and Dingus, Haley & Holderness for Plaintiff and Appellant.

Alan E. Harris, Daniel H. Bookin and Farella, Braun & Martel for Defendant and Respondent.

OPINION

**HANING, J.**—Titan Group, Inc. (Titan) appeals, under Code of Civil Procedure section 1294, an order denying its petition to compel arbitration with Sonoma Valley County Sanitation District (District) over a disputed construction contract.

Titan, a construction contractor, and District entered into a contract for the construction of waste water treatment facilities. In compliance with

Health and Safety Code section 4755, the contract was awarded after competitive bidding. It was drafted by District and awarded to Titan without negotiation of its terms or requirements.

Pursuant to a requirement of the United States Environmental Protection Agency (40 C.F.R., pt. 35, subpt. E, § 35.938-8 and appen. C-2, par. 7), the contract contained a provision[1] stating: "Except as may be otherwise provided in this contract, all claims, counterclaims, disputes and other matters in question between the Owner and Contractor arising out of or relating to this agreement or the breach thereof will be decided by arbitration *if the parties hereto mutually agree,* or in a court of competent jurisdiction within the State in which the owner is located." (Italics supplied.)

The contract also contained the following arbitration clause[2] concerning dispute resolution: "SG-24 ADJUSTMENT OF DISPUTE. All questions or controversies which may arise between the Contractor [Titan] and the Owner [District], under or in reference to this contract, *may* be subject to the decision of some competent person to be agreed upon by the Owner and the Contractor who shall act as referee, and his decisions shall be final and conclusive upon both parties. Should the Owner and the Contractor be unable to agree upon a referee, a board of three arbitrators shall be chosen, one by the Owner, one by the Contractor, and the third by the two so chosen, and the decision of any of said arbitrators shall be final and binding upon the parties. If either party to the contract neglects or fails for a period of ten days after notice from the other party to designate an arbitrator hereunder, the arbitrator designated by the other party shall have full power to decide the dispute in the same manner as though a board of three arbitrators had been selected. The referee or arbitrators shall decide which party shall pay the cost of referral or arbitration, and final payment to the contractor shall not be made until the full decision of the referee or arbitrators has been rendered." (Italics added.)

Following completion of the project, Titan submitted a claim for additional compensation. After unsuccessful attempts to negotiate the claim, Titan filed a petition to compel arbitration under Code of Civil Procedure sections 1281.2 and 1290, contending the contract required arbitration. District opposed the motion on the grounds the word "may" made arbitration voluntary, and that arbitration would be the method of resolving disputes only if both parties agreed thereto. District's opposition was accompanied by the sworn declaration of David L. Wallace, a civil engineer with Sonoma

---

[1]Hereafter designated EPA clause.

[2]Hereafter designated FmHA clause.

County Public Works Department, who was District's manager for the project. Part of his duties in connection therewith included "the supervision of the drafting of the contract that would govern construction of the Wastewater Reclamation Facilities." His declaration stated, in part: "The District wanted to preserve its right to have a court or jury decide a given dispute if the District thought it would be appropriate. Because the District sought participation in securing financing for the project from the Farmers Home Administration, United States Department of Agriculture (FmHA), certain . . . supplemental general conditions were included in the contract [in addition to the EPA clause]. One of these supplemental general conditions was SG-24, 'Adjustment of Dispute.' . . . Section SG-24, as proposed by the FmHA, provided that, 'All questions or controversies which may arise between the Contractor and the Owner, under or in reference to this contract, *shall* be subject to the decision of some competent person. . . .' . . . Because the District was adamant that arbitration of any dispute be voluntary rather than compulsory, we changed the language of SG-24 from 'shall be subject to' to '*may* be subject to.' . . . The purpose behind changing the language of SG-24 from 'shall' to 'may' was to ensure that arbitration was to be optional, rather than compulsory. . . ." There is no indication that this act, nor the reasons therefore, were ever communicated to Titan.[3]

The court, after hearing oral argument and considering the parties' papers, denied Titan's motion without issuing any statement of decision. Nothing in the record before us indicates either party sought a statement of decision. ■ When an order refusing to compel arbitration contains nothing respecting its basis, its legality must be determined from the record and the provisions of Code of Civil Procedure, section 1281.2. (*A. D. Hoppe Co.* v. *Fred Katz Constr. Co.* (1967) 249 Cal.App.2d 154, 158-159 [57 Cal.Rptr. 95, 25 A.L.R.3d 1162].)

■ Code of Civil Procedure section 1281.2 states, in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists,* . . ." (Italics added.) "The clear purpose and effect of section 1281.2 is to require the superior court to determine in advance whether there is a duty to arbitrate the controversy which has arisen. The performance of this duty necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." (*Freeman* v.

---

[3]This is not unexpected, since the contract was not the product of any negotiations or joint efforts of the parties, but was drafted entirely by District and put out for bid.

*State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 [121 Cal.Rptr. 477, 535 P.2d 341].) The question here, therefore, is whether "the party resisting arbitration [i.e., District] in fact agreed to arbitrate." (*Painters Dist. Council No. 33* v. *Moen* (1982) 128 Cal.App.3d 1032, 1037 [181 Cal.Rptr. 17], and citations therein.)

■ " 'An appellate court is not bound by [the trial court's] construction of the contract based solely upon the terms of the written instrument . . . where there is no conflict in the evidence . . . .' " (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) In the absence of conflicting extrinsic evidence, the interpretation of a contract becomes a question of law and an appellate court "must make an independent determination of the meaning of the contract." (*Id.*, at p. 866.)

■ District, via the Wallace declaration, contends it included the FmHA clause only to obtain financing for its project from the Farmers Home Administration, but changed "shall" as proposed by FmHA, to "may" in order to preserve its right to court adjudication of disputes, thereby manifesting its intent to preserve its right to jury trial. ■ It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation. "[I]t is now a settled principle of the law of contract that the undisclosed intentions of the parties are . . . immaterial; and that the outward manifestation or expression of assent is controlling." (*Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13]; see also *Mission Valley East, Inc.* v. *County of Kern* (1981) 120 Cal.App.3d 89, 97 [174 Cal.Rptr. 300]; *City of Mill Valley* v. *Transamerica Ins. Co.* (1979) 98 Cal.App.3d 595, 603 [159 Cal.Rptr. 635].)

■ In construing the agreement, "we are guided by the rule that, contractual arbitration being a favored method of resolving disputes, every intendment will be indulged to give effect to such proceedings." (*Painters Dist. Council No. 33* v. *Moen, supra,* 128 Cal.App.3d at p. 1037; *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178]; *McRae* v. *Superior Court* (1963) 221 Cal.App.2d 166, 170-171 [34 Cal.Rptr. 346, 98 A.L.R.2d 1239].) Furthermore, "[i]t is a fundamental rule of contractual construction that where two interpretations are reasonably permissible, courts will adopt that which renders a contract valid and effectual." (*Service Employees Internat. Union, Local 18* v. *American Building Maintenance Co.* (1972) 29 Cal.App.3d 356, 359 [105 Cal.Rptr. 564], and citations therein; Civ. Code, §§ 1641, 1643.)

■ We are also mindful of the constitutional right to trial by jury. (Cal. Const., art. I, § 16.) "The right to trial by jury is a basic and fundamental

part of our system of jurisprudence. [Citations.] As such, it should be zealously guarded by the courts. [Citations.] In case of doubt, therefore, the issue should be resolved in favor of preserving a litigant's right to trial by jury. [Citations.]" (*Byram* v. *Superior Court* (1977) 74 Cal.App.3d 648, 654 [141 Cal.Rptr. 604].)

█ The EPA clause adds nothing to the contract insofar as arbitration is concerned. (It does establish state jurisdiction for legal action.) It merely states that the parties will arbitrate their disputes *if they* "*mutually agree*" to do so, or else the dispute will be resolved in court. However, this is meaningless, since they can agree to arbitrate even without this clause. The parties are unable to advise us why the EPA requires or suggests this particular language, and our own research discloses no reason.[4]

█ The FmHA clause presents a different problem. In *Service Employees Internat. Union, Local 18* v. *American Building Maintenance Co., supra,* 29 Cal.App.3d 356, a similar arbitration clause read: " 'In the event that any matter submitted to the Board of Adjustment cannot be settled within five (5) consecutive business days, time may be extended by mutual agreement with the parties hereto, or *the issue in dispute may be submitted to an impartial arbitrator* . . . . In the event arbitration is resorted to, then the cost of arbitration *shall* be borne . . . .' " (*Id.*, at p. 358, italics in original and italics supplied.) The *Service Employees* court analogized the word "may" in the agreement to the word "may" in statutes where its use grants a right or privilege to either opposing party, e.g., "An appeal may be taken . . ." (Code Civ. Proc., § 904) or "An action may be brought . . ." (Code Civ. Proc., § 801.1). It then held, citing several federal cases with approval, that "may" in the context of the arbitration clause should be construed to give either aggrieved party the option to require arbitration. Thus, we focus on the same issue confronting the *Service Employees* court: whether the contractual proviso that disputes "may be subject" to arbitration requires mutual consent of the parties or may be enforced by either.

Appellant argues that if the FmHA clause were interpreted to mean a dispute may be subject to arbitration only if both parties subsequently agree, it would serve no purpose, since parties can always agree to arbitrate a dispute; they do not need a contract to tell them they may agree to do so. Therefore, unless this clause is interpreted to mean the party seeking arbitration is entitled to demand it, it would "lack validity and enforceability,

---

[4]At our request the parties also submitted supplemental letter briefs concerning the FmHA clause. District's response consists primarily of evidentiary material which was not submitted to the trial court, and thus we do not consider it.

and would amount to no more than a barren recital that the parties might in the future agree to arbitrate a dispute." (*Service Employees Internat. Union, Local 18* v. *American Building Maintenance Co., supra,* 29 Cal.App.3d at p. 358.)

However, the instant case differs from *Service Employees* in at least one significant respect. In *Service Employees* the agreement in question gave the parties only two alternatives if the grievance committee (board of adjustment) failed to resolve the matter in dispute within the five day period prescribed: they could either extend the time within which the grievance committee could act, or they could submit the dispute to an arbitrator. A court or jury trial was not an available option.

Also, contrary to appellant's interpretation of the FmHA clause, it does serve a contractual function. It provides the *procedure* for arbitration in the event the parties agree to arbitrate.

In light of the importance of the jury trial in our system of jurisprudence, any waiver thereof should appear in clear and unmistakable form. This agreement does not present such a waiver. We cannot elevate judicial expediency over access to the courts and the right to jury trial in the absence of a clear waiver.

The order is affirmed.

Low, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 1985.