[No. H025147. Sixth Dist. July 29, 2003.]

DALE WOLSCHLAGER, Plaintiff and Respondent, v.
FIDELITY NATIONAL TITLE INSURANCE COMPANY et al.,
Defendants and Appellants.

COUNSEL

William A. O'Connell for Defendants and Appellants.

Tom N. Brown for Plaintiff and Respondent.

OPINION

RUSHING, P. J.— ■ Plaintiff Dale Wolschlager purchased a title insurance policy (Policy) from defendant Fidelity National Title Insurance Company on the basis of a preliminary report he received and approved. The preliminary report did not state that the Policy he would receive contained an arbitration clause; however, the Policy he received after the close of escrow did in fact have one. When defendant denied plaintiff's subsequent claim, plaintiff filed suit and the defendant petitioned to compel arbitration. The trial court denied the petition. In this appeal, we are presented with the question of whether an arbitration clause found in a title insurance policy, which policy is incorporated by reference into the preliminary report, binds an insured who sees neither the policy nor the arbitration clause prior to approving the preliminary report. We hold that because the preliminary report sufficiently incorporated the arbitration clause by reference, the plaintiff is bound by the agreement to arbitrate. Therefore, we reverse the order denying the petition to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to the close of escrow on his house, plaintiff sought to purchase title insurance from defendant. As is customary, plaintiff received a preliminary report[1] from defendant which he read and approved. Included in the preliminary report was an "Exhibit A," which contained selected portions of the proposed policy to be issued. The Policy itself was not attached. The selected policy provisions in Exhibit A do not include or make reference to any arbitration provisions and there are no arbitration provision anywhere in the preliminary report itself. However, Exhibit A does not purport to contain all of the provisions of the Policy, and the first page of the preliminary report states, in regular font, "Copies of the policy forms should be read. They are available from the office which issued this Report."

Approximately one month after escrow had closed, the plaintiff received the full Policy, which contained an arbitration clause.[2] Some time later, the plaintiff discovered that a $27,000 lien encumbered the property he had purchased, although neither the preliminary report nor the Policy had made reference to the lien. On April 27, 2001, plaintiff, through his attorney, filed a claim with defendant. On May 30, 2001, defendant sent plaintiff's attorney a

---

[1] " 'Preliminary report', … [is a] report[] furnished in connection with an application for title insurance and [is an] offer[] to issue a title policy subject to the stated exceptions set forth in the report[] and such other matters as may be incorporated by reference therein.... Any such report shall not be construed as, nor constitute, a representation as to the condition of title to real property, but shall constitute a statement of the terms and conditions upon which the issuer is willing to issue its title policy, if such offer is accepted." (Ins. Code, § 12340.11.)

[2] Paragraph 13 of the "Conditions and Stipulations," found at page 4 of 12, states in relevant part, "ARBITRATION-Unless prohibited by applicable law, either the Company or the Insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association...."

"preliminary denial" letter. Subsequently, defendant's attorney communicated directly with plaintiff several times regarding his claim without either the consent or knowledge of plaintiff's counsel. After these discussions failed to resolve the matter, defendant sent the plaintiff a formal denial letter on August 31, 2001. The formal denial letter informed plaintiff that if he believed that the defendant's claim determination had been incorrect, he could seek review by the California Department of Insurance. At no time during their interactions did the defendant or its attorney inform the plaintiff that his policy contained an arbitration clause or that he could seek to arbitrate the matter. Nor did defendant subsequently make reference to the arbitration clause when informed that plaintiff would be filing a bad faith suit, when served with the suit, or even in filing their answer. It was not until the plaintiff served his discovery requests on June 28, 2002, that defendant first expressed its intention to seek arbitration.

On July 5, 2002, defendant formally demanded that plaintiff submit the controversies raised in the complaint to arbitration. After plaintiff refused, the defendant filed a petition to compel arbitration in the trial court. In denying the petition, the court explained, "Binding a party to a mandatory arbitration provision requires that a party has been clearly and unequivocally informed of the arbitration provision. Here a reference to or incorporation of additional documents which were not attached—or not presented to the party, I should say, nor immediately available to a party and certainly were not attached to the documents, the original documents at the time of signing an agreement, without some specific note or some specific warning of ADR provisions that would be contained in these referenced documents is inadequate to bind that party. I would also note that the plaintiff has not waived his ability to object to the arbitration clause by failing to raise any objection after receiving the policy. Plaintiff has objected at the first opportunity, namely when the defendant raised the issue by demanding arbitration. [¶] ... The defendants have not waived their right to demand arbitration by failing to advise the plaintiff of arbitration rights in their rejection letter. This may be evidence of bad faith perhaps, but it's not a waiver.... I would also note that this decision is not based on any finding of improper defense attorney communications with the plaintiff and the decision is not based on any theory that there was an adhesion contract." This appeal ensued.

## DISCUSSION

Under Code of Civil Procedure section 1281.2, a court shall order parties "to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for revocation of the agreement." Here the trial court's findings were two-fold.

While it determined that neither party's actions amounted to waiver, it held that no binding agreement to arbitrate existed between them in the first instance.

To the extent that the extrinsic evidence is undisputed, we review the arbitration agreement de novo to determine whether it is legally enforceable. (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174 [116 Cal.Rptr.2d 671].) However, on the question of waiver, we will affirm if the trial court's decision is supported by substantial evidence. "If [it is] not, we may decide the issue as a matter of law. [Citations.]" (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 557 [94 Cal.Rptr.2d 201]; see also *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983 [64 Cal.Rptr.2d 843; 938 P.2d 903].)

*Enforceability of the Arbitration Clause*

"The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.]" (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived. (*Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1129 [211 Cal.Rptr. 62].) Therefore, as did the trial court, we must first determine whether the parties, in fact, have an enforceable agreement to arbitrate their controversy. In making this determination, we apply general California contract law. (*Rice v. Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1023 [1 Cal.Rptr.2d 265], disapproved on another point in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 407 [58 Cal.Rptr.2d 875, 926 P.2d 1061]; *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 637 [223 Cal.Rptr. 838].)

Defendant contends that the only actual contract between the parties is the Policy itself because the preliminary report is nothing more than an offer. Defendant further contends that plaintiff cannot challenge the enforceability of the arbitration clause in the Policy because he never objected to any of the terms therein, even after receiving the Policy. " ' " " 'It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms.* It is a duty of the insured to read his policy.' " [Citations.]' [Citation.]" (*Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1155 [50 Cal.Rptr.2d 178].) However, unlike a health or liability insurance policy, as was involved in *Chase*, a title insurance policy has a one-time premium and remains in effect so long as the insured owns the property. A purchaser may not cancel the policy and switch to another carrier without forfeiting his premium.

■ The process of obtaining title insurance, therefore, contemplates the receipt of a title report before the close of escrow, setting forth the "conditions upon which the issuer is willing to issue its title policy." (Ins. Code, § 12340.11.) The insured's approval and acceptance of the conditions set forth in the preliminary report create a binding contract based on the terms set forth in the report and any materials that are incorporated therein by reference. (*Ibid.*) Therefore, whether plaintiff was bound by an arbitration clause depends directly on whether that term was set forth in the preliminary report or incorporated therein by reference.

Because it is undisputed that the preliminary report does not itself contain an arbitration clause, the critical question is whether the arbitration clause was sufficiently incorporated into the preliminary report by reference to bind the plaintiff contractually. " 'A contract may validly include the provisions of a document not physically a part of the basic contract .... "It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] But each case must turn on its facts. [Citation.] For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." ' [Citations.]" (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54 [67 Cal.Rptr.2d 850].)

In *King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349 [175 Cal.Rptr. 226] (*King*), the appellant realtors, in applying to the real estate board, contracted to abide by its bylaws. One of the bylaws required appellants to arbitrate as set forth in the California Association of Realtors Arbitration Manual. In finding that the arbitration provisions were incorporated into their contract by reference, the court in *King* observed that appellants had read the bylaws requiring arbitration, enjoyed familiarity with the arbitration manual having referred thereto on occasion, and that it was readily available to both appellants. (*Id.* at p. 353.)

In *Chan v. Drexel Burnham Lambert Inc.* (1986) 178 Cal.App.3d 632, 641 [223 Cal.Rptr. 838] (*Chan*), the court distinguished *King* factually to find that the arbitration provisions were not sufficiently incorporated by reference where the contract did not clearly refer to and identify "the incorporated document wherein the arbitration clause appeared." (*Id.* at p. 642.) *Chan* involved a stockbroker who, as part of an application to be a securities agent, had agreed to abide by the statutes and rules of the three stock trading organizations to which his application would be submitted. One of the stock trading organizations promulgated a rule requiring arbitration. Because the application did not specifically identify the rule where the arbitration clause was located by name, the court found the reference amorphous, and held that

because the contract did not guide the reader to the incorporated document, it failed to *"clearly and unequivocally"* refer to the incorporated document. (*Id.,* at p. 643.)

Here, the preliminary report referred to the Policy a number of times. Specifically, the first page of the report stated, "The printed Exceptions and Exclusions from coverage of said Policy or Policies are set forth in Exhibit A attached. Copies of the Policy forms should be read. They are available from the office which issued this Report." The report also listed the form of Policy of Title Insurance contemplated by the Report as C.L.T.A. Coverage Policy 1990. Unlike in *Chan,* where the document signed by the appellant referred generally to a number of different documents incorporated by reference, the Preliminary Report specifically identifies the document incorporated as the Policy, lists the form which is contemplated and tells the recipient where they can find the Policy. This incorporation was both clear and unequivocal.

"In addition to the reference being clear and unequivocal, *Williams Constr. Co. v. Standard-Pacific Corp.* (1967) 254 Cal.App.2d 442, 454 [61 Cal.Rptr. 912], requires the terms of the incorporated document be known or easily available to the party to be bound." (*Chan, supra,* 178 Cal.App.3d at p. 644, fn. omitted.) There was no substantive dispute that plaintiff did not actually know about the arbitration clause. Although the defendant contends that plaintiff's counsel admitted knowledge of the arbitration clause, counsel's awareness of the clause after the claim arose is not relevant to the question of whether plaintiff knew about it at the time he entered into the contract. However, even if plaintiff did not know about the arbitration clause, the Policy with the clause was easily available to him. The preliminary report identified the Policy by name and directed the plaintiff to where he could inspect it. Nothing further was needed to bind the plaintiff.

Plaintiff argues, and the trial court agreed, that because the right to a jury trial is a substantive right, plaintiff was entitled to some kind of specific warning in the preliminary report that by accepting it he was agreeing to give up his rights. ■ There is no authority requiring the defendant to specify that the incorporated document contains an arbitration clause in order to make the incorporation valid. All that is required is that the incorporation be clear and unequivocal and that the plaintiff can easily locate the incorporated document. Additionally, plaintiff is correct that defendant could easily have attached the entire Policy instead of only selected portions. While defendant's choice to not do so may create an inference useful to the substance of the plaintiff's bad faith case, it does not prevent the formation of a valid agreement to arbitrate.

The trial court erred in concluding that there was no enforceable agreement to arbitrate between the plaintiff and the defendant.

*Waiver*

In denying the petition to compel arbitration, the trial court specified that its decision was not based on any finding of waiver because there was no factual basis for finding waiver. ■ While in general arbitration is a highly favored means of settling disputes (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261]), it is beyond dispute that a trial court may deny a petition to compel arbitration if it finds the moving party has waived that right. (Code Civ. Proc., § 1281.2, subd. (a); *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211 [69 Cal.Rptr.2d 79].) We will affirm the trial court's findings if they are supported by substantial evidence. (*Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 983)

" 'There is no single test for waiver of the right to compel arbitration, but waiver may be found where the party seeking arbitration has (1) previously taken steps inconsistent with an intent to invoke arbitration, (2) unreasonably delayed in seeking arbitration, or (3) acted in bad faith or with willful misconduct. [Citations.]' [Citation.]" (*Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1363 [96 Cal.Rptr.2d 295].) Plaintiff contends that the trial court's decision that there was no waiver was not supported by substantial evidence. Specifically, plaintiff asserts that defendant never informed plaintiff of the arbitration clause despite a long claims and negotiations process and that defendant failed to timely raise the issue either prior or subsequent to the filing of the complaint.

■ In order to find a waiver by the insurer of the right to arbitration, an insured must prove that defendant engaged in "conduct *designed* to mislead policyholders." (*Chase v. Blue Cross of California, supra,* 42 Cal.App.4th at p. 1157.) "Such a requirement balances the enhanced duty of the insurer as a contracting party against the strong public policy in favor of arbitration. Furthermore, the court's focus when evaluating an allegation of forfeiture should be on the subjective intent of the insurer. Such focus is consistent with a finding of bad faith and the imposition of a penalty in the form of forfeiture." (*Ibid.*) Conduct designed to mislead can include failure to "timely or meaningfully ... apprise its insureds of their rights to arbitration ...." (*Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418, 421 [158 Cal.Rptr. 828, 600 P.2d 1060] [insurer waived right to arbitrate where it failed to advise policyholders of the procedure for initiating arbitration and arbitration clause was placed obscurely in the policy]; see also *Sarchett v. Blue Shield of California* (1987) 43 Cal.3d 1, 15 [233 Cal.Rptr. 76, 729 P.2d 267] (Sarchett) [waiver found where conduct of an insurer, who had reason to know that insured was unaware of arbitration rights but failed to inform the insured of his rights, was designed to mislead].)

Here, the defendant's conduct was somewhat questionable. Defendant did not affirmatively notify the plaintiff of the right to arbitrate the controversy either before or after it formally denied the claim. Additionally, when defendant wrote to the plaintiff to deny the claim, it advised him of his right to seek redress with the Department of Insurance, but failed to make any mention of the right to arbitrate the controversy. However, unlike in *Davis*, the arbitration clause here was not obscure, it was presented in bold in a document which was both properly incorporated by reference into the terms of the parties' agreement and actually in plaintiff's possession at the time he filed his claim. Further, unlike *Sarchett* the defendant had no reason to know that plaintiff was unaware of his arbitration rights. Plaintiff was represented by counsel initially during the claims process and plaintiff's counsel admitted knowing about the clause since the time plaintiff first provided him with a copy of the Policy.

Nor can we say that defendant unreasonably delayed or acted inconsistently with the right to demand arbitration. Although defendant failed to raise arbitration as an affirmative defense in their answer to the complaint, it demanded arbitration as soon as plaintiff served his first discovery. Since it did not substantively engage in the litigation process, there was no evidence of any appreciable prejudice to plaintiff. (*Van Ness Townhouses v. Mar Industries Corp.* (9th Cir. 1988) 862 F.2d 754, 758 [the right to arbitrate is waived when its proponent, with knowledge of an existing right to compel arbitration, acts inconsistently with the right, thereby causing prejudice to the other party].) Given the totality of the circumstances, substantial evidence supported the trial court's finding on the question of waiver. Therefore waiver does not provide a basis for denying the petition to compel arbitration.

## DISPOSITION

The order denying the petition to compel arbitration is reversed. The matter is remanded so that the trial court may enter its order granting the petition to compel arbitration and staying the matter pending arbitration.

Premo, J., and Elia, J., concurred.

On August 27, 2003, the opinion was modified to read as printed above.