Filed 4/2/13  Truplug v. Forespare Products CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRUPLUG, a division of ARTELIER STUDIO, LLC,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FORESPAR PRODUCTS CORP., et al.,<br><br>    Defendants and Appellants. | G046983<br><br>(Super. Ct. No. 30-2011-00510961)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Elizabeth Olsen, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Barker Olmsted & Barnier, APLC, Christopher W. Olmsted and Jenna M. Crisci for Defendants and Appellants.

Jeffrey L. Marcus for Plaintiff and Respondent.

Forespar Products Corp. and Scott Foresman (collectively Forespar) appeal from the order denying its petition to compel arbitration of an action filed against it by Truplug, a division of Artelier Studio, LLC (Truplug).  We find the trial court correctly interpreted the parties' contract, and we affirm the order.

FACTS AND PROCEDURE

Truplug is the inventor of a product (called Truplug) described as "a temporary and emergency plug for a boat leak caused by a maintenance failure or boat hull breach . . . ."  In 2009, Truplug and Forespar entered into an agreement (the Agreement) whereby Truplug would manufacture the product and Forespar had exclusive rights to *market* and distribute the product.

As relevant to the petition to compel arbitration, the Agreement contained the following provisions:

"15.4 **Termination for Material Breach**.  In the event that either party materially breaches any provision of this Agreement, the other party hereto shall have the right, in addition to all other remedies available to it, to terminate this Agreement upon ninety (90) days' written notice to the defaulting party; provided, however, that if said party within such ninety (90) day period cures the breach, this Agreement and the license rights granted hereunder shall continue in full force and effect.  All breaches of this Agreement shall be construed in a manner as to be curable.  In the event of a dispute over whether a breach has occurred or has been cured after such ninety (90) day period, the parties agree to toll the time period provided to cure the breach and participate in the following alternative dispute resolution procedures.  The parties shall try in good faith to settle the dispute by mediation . . . before resorting to arbitration, litigation, or some other dispute resolution procedure.  In the event a party refuses to participate in the mediation, the other party shall be entitled to recover fees and costs in any ensuing proceeding.  In the event such mediation does not resolve the dispute, either party may deliver a copy

2

thereof to the American Arbitration Association [AAA] . . . along with a copy of this Agreement, for binding arbitration conducted . . . under the AAA's Commercial Arbitration Rules and pursuant to the Expedited Procedures provisions thereof.  The arbitrator shall determine:  (i) the existence of such breach; (ii) if a breach has occurred, whether such breach was cured; and (iii) if such breach was not cured, what is required for such cure.  If the arbitrator determines or declares that a breach occurred but was not cured, the breaching party shall have thirty (30) days to cure the breach in accordance with the arbitrator's determination.  Compliance by the breaching party within the aforesaid thirty (30) day period with the determination or declaration of what shall constitute cure of such breach shall constitute a full, complete and timely cure of such breach for purposes of this Agreement.  In event the breaching party does not timely cure the breach in accordance with the arbitrator' determination, the arbitrator may, upon request of the non-breaching party, declare the Agreement to be terminated."

"16.1 **Dispute Resolution.**  Whenever any party desires to institute litigation proceedings against the other party concerning this Agreement, it shall provide written notice to that effect to such other party.  The party giving such notice shall refrain from instituting said litigation proceedings for a period of thirty (30) days following the date it provided such notice.  During such period, the parties shall attempt in good faith to amicably resolve their dispute by negotiation.  This Section 16.1 shall not prohibit any party from seeking injunctive relief at any time to restrain or prevent a breach or threatened breach of this Agreement."

"16.3 **Governing Law; Service of Process**.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California, without regard to conflicts of laws principles, and applicable federal law of the United States.  Except as otherwise provided in Section 15.4, any action or proceeding in respect of any claim arising out of or related to this Agreement or the transactions contained in or contemplated by this Agreement, whether in tort or contract

3

or at law or in equity, shall be brought in a state or federal court sitting in the County of Orange (the **"Designated Courts"**).  Each of the parties:  (i) irrevocably submits to the exclusive jurisdiction of the Designated Courts; (ii) waives any objection to the laying of venue in any such action or proceeding in the Designated Courts; (iii) waives any objection that the Designated Courts are an inconvenient forum or do not have jurisdiction over any party hereto; and (iv) agrees that service of process upon such party in any such action or proceeding shall be effective if notice is given in accordance with Section 16.7."

Truplug filed the instant complaint against Forespar in September 2011. Truplug's complaint alleged that in negotiating the Agreement, Forespar made numerous misrepresentations about its expertise in marketing marine products and its qualifications and ability to market the Truplug product that induced Truplug into entering into the Agreement.  During the first eight months of the Agreement, Forespar ordered over 19,000 units of the Truplug product, but thereafter placed no orders.  Forespar then ceased marketing, advertising, or distributing the Truplug product.  On January 21, 2011, Truplug gave Forespar written notice of the dispute in accordance with the Agreement. In June 2011, Truplug sought mediation of the dispute, but Forespar rejected the mediation request.

Truplug's complaint alleged causes of action for intentional and negligent misrepresentation relating to Forespar's pre-Agreement representations.  The complaint alleged Forespar was negligent in marketing and distributing the Truplug product.  And the complaint sought injunctive and declaratory relief in the form of termination of the Agreement so Truplug could market and distribute its product.

Forespar responded to Truplug's complaint by filing a petition to compel arbitration pursuant to Code of Civil Procedure section 1281.2,[1] contending section 15.4 of the Agreement required mandatory arbitration of "any dispute that may arise under said [A]greement . . . ." The petition attached the Agreement and a declaration from Foresman stating he had specifically negotiated section 15.4 with Truplug's principal, Henry Goldman, Goldman was "particularly keen to include ADR provisions as a means to avoid expensive litigation[,]" and the parties intended "to resolve any dispute without resorting to civil court litigation."

Truplug opposed the petition. It objected to Foresman's declaration as inadmissible hearsay. It argued the arbitration language was ambiguous, inconsistent with other parts of the Agreement, and did not mandate arbitration of all disputes. Truplug included several documents with its opposition showing it had asked Forespar to participate in mediation of the dispute, but Forespar refused.

The trial court denied the petition to compel arbitration concluding, "[t]he language of the . . . Agreement does not mandate binding arbitration. It merely gives the parties the option of resolving issues arising from the [A]greement via binding arbitration." At the hearing, the court observed it was in part focusing on the use of the word "'may' as permissive rather than 'shall' as mandatory[,]" in section 15.4. But it also was considering the language that parties would "try in good faith to settle the dispute by mediation . . . before resorting to arbitration, litigation or some other dispute resolution procedure," and section 16.3 providing that any litigation would be brought in state or federal court in Orange County. "So the way I read it, arbitration wasn't necessarily mandated. It was one of the choices provided for in the agreement itself. If they hadn't contemplated litigation in a court like this, I don't know why they would have

---

[1]     All further statutory references are to the Code of Civil Procedure. A petition to compel arbitration "may be filed in lieu of filing an answer to a complaint." (§ 1281.7.)

included that term." The court did not rule on evidentiary objections. Forespar appeals from the order denying its petition. (§ 1294, subd. (a).)

## DISCUSSION

Forespar contends the trial court should have granted its petition to compel arbitration because the Agreement provided for mandatory binding arbitration of all disputes arising from the Agreement. We find no error.

"[S]ection 1281.2 states, in pertinent part: 'On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists . . . .*' (Italics added.) 'The clear purpose and effect of section 1281.2 is to require the superior court to determine in advance whether there is a duty to arbitrate the controversy which has arisen. The performance of this duty necessarily requires the court to examine and, to a limited extent, construe the underlying agreement.' [Citation.] The question here, therefore, is whether 'the party resisting arbitration [i.e., [Truplug]] in fact agreed to arbitrate.' [Citations.]" (*Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1126-1127 (*Titan Group*).)

"'"An appellate court is not bound by [the trial court's] construction of the contract based solely upon the terms of the written instrument . . . where there is no conflict in the evidence . . . ."' [Citation.] In the absence of conflicting extrinsic evidence, the interpretation of a contract becomes a question of law and an appellate court 'must make an independent determination of the meaning of the contract.' [Citations.]" (*Titan Group, supra,* 164 Cal.App.3d at p. 1127.)

Forespar contends that in interpreting section 15.4 of the Agreement, the trial court erroneously focused on the use of the word "may," (i.e., "[i]n the event such mediation does not resolve the dispute, either party *may* deliver a copy thereof to the

6

[AAA] . . . for binding arbitration . . ." (italics added), and interpreted that word as meaning arbitration was permissive, not mandatory. Forespar relies on two cases, *Service Employees Internat. Union, Local 18 v. American Building Maintenance Co.* (1972) 29 Cal.App.3d 356 (*Service Employees*), and *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576 (*Pacific Gas & Electric*) [overruled on another ground in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367], which it argues compels the conclusion the use of the word "may" only refers to the right of either party to invoke arbitration, not to whether arbitration is permissive or mandatory. In other words, the word "may" means only that the Agreement does not require the parties to arbitrate in all cases. Rather, arbitration is triggered only when a party opts for it. But once that choice is made by one party, the other is required to arbitrate.

In *Pacific Gas & Electric Co., supra,* 15 Cal.App.4th 576, the agreement pertaining to the power company's purchase of natural gas from an oil company provided for certain modifications to the gas price. If the parties could not agree on the new price "'the price to be paid for such gas . . . shall be established by [binding] arbitration . . . .'" (*Id.* at p. 583.) The agreement went on to "provide[] that '[i]n addition to those disputes which are required to be arbitrated under the provisions hereof [i.e., market price], *any other dispute . . . arising between [b]uyer and [s]eller under any provision hereof* which cannot be settled by the parties within a reasonable time *may be* submitted by either party to arbitration' . . . ." (*Ibid.*, italics added.) The court rejected the argument that use of the word "may" was permissive and allowed arbitration only if both parties agreed. The court disagreed, concluding that in the context of the agreement "the [word] 'may' signifies the right of the party to invoke arbitration." (*Id.* at p. 595.)

In *Service Employees*, *supra,* 29 Cal.App.3d 356, the agreement provided for disputes to be first submitted to "'the Board of Adjustment'" and "'[i]n the event that any matter submitted to the Board of Adjustment cannot be settled within

7

five (5) consecutive business days, time may be extended by mutual agreement with the parties hereto, or *the issue in dispute may be submitted to an impartial arbitrator*" who's decision "'shall be binding upon the parties hereto.' . . . " (*Id.* at p. 358.) The court considered "whether, in the agreement's context, the language . . . must be construed as implying (1) with the consent of both parties, or (2) at the option of either." (*Ibid.*) It decided the latter construction was correct because if the consent of both parties were required, "the arbitration provision would be of little purpose. It would lack validity and enforceability, and would amount to no more than a barren recital that the parties might in the future agree to arbitrate a dispute." (*Ibid.*)

By contrast, in *Titan Group, supra,* 164 Cal.App.3d 1122, the agreement at issue provided in pertinent part, "All questions or controversies which may arise between the [parties], under or in reference to this contract, *may* be subject to the decision of some competent person to be agreed upon by the [parties] who shall act as referee, and his decisions shall be final and conclusive upon both parties. Should the [o]wner and the [c]ontractor be unable to agree upon a referee, a board of three arbitrators shall be chosen, one by the [o]wner, one by the [c]ontractor, and the third by the two so chosen, and the decision of any of said arbitrators shall be final and binding upon the parties. . . ." (*Id.* at p. 1125.) The *Titan* court concluded the arbitration provision was not mandatory.

*Titan* observed that "[i]n construing the agreement, 'we are guided by the rule that, contractual arbitration being a favored method of resolving disputes, every intendment will be indulged to give effect to such proceedings.' [Citations.] Furthermore, '[i]t is a fundamental rule of contractual construction that where two interpretations are reasonably permissible, courts will adopt that which renders a contract valid and effectual.' [Citations.]" (*Titan Group, supra,* 164 Cal.App.3d at p. 1127.)

*Titan*, however, also observed that in determining whether arbitration was mandatory, "We are also mindful of the constitutional right to trial by jury. (Cal. Const., art. I, § 16.) 'The right to trial by jury is a basic and fundamental part of our system of

8

jurisprudence. [Citations.] As such, it should be zealously guarded by the courts. [Citations.] In case of doubt, therefore, the issue should be resolved in favor of preserving a litigant's right to trial by jury. [Citations.]' [Citation.]" (*Titan Group, supra,* 164 Cal.App.3d at pp. 1127-1129.) The court concluded the agreement before it did not demonstrate such a waiver "in clear and unmistakable form. . . . We cannot elevate judicial expediency over access to the courts and the right to jury trial in the absence of a clear waiver." (*Id.* at p. 1129.) *Titan* distinguished *Service Employees*, *supra,* 29 Cal.App.3d 356, noting the *Service Employees* agreement "gave the parties only two alternatives if the grievance committee (board of adjustment) failed to resolve the matter in dispute within the five day period prescribed: they could either extend the time within which the grievance committee could act, or they could submit the dispute to an arbitrator. A court or jury trial was not an available option." (*Titan Group, supra,* 164 Cal.App.3d at p. 1129.) Additionally, it rejected the argument interpreting the arbitration provision as permissive rendered it meaningless because "it does serve a contractual function. It provides the *procedure* for arbitration in the event the parties agree to arbitrate." (*Ibid.*)

Although Forespar attempts to characterize *Titan* as an outlier, we note other cases have echoed its concerns. (See *Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 789 (*Wolschager*) ["Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 804 (*Badie*) ["[W]aiver of the right to jury trial is inherent in the decision to resolve disputes in a nonjudicial forum. But absent a clear agreement to submit disputes to arbitration or some other form of ADR, we cannot infer that the right to a jury trial has been waived"].)

Turning to the provisions before us, we conclude the trial court correctly found the Agreement did not provide for mandatory arbitration. We look at the arbitration language in the context of the entire Agreement. Section 16.1 of the

9

Agreement, titled "Dispute Resolution," contained no reference to arbitration and provided that "[w]henever any party *desires to institute litigation proceedings* against the other party concerning this Agreement," it must give notice to the other party and "refrain from instituting said *litigation proceedings* for a period of thirty (30) days" during which time "the parties shall attempt in good faith to amicably resolve their dispute by negotiation." (Italics added.) Section 16.3, the choice of law provision, provided that "[e]xcept as otherwise provided in Section 15.4, any action or proceeding in respect of *any claim arising out of or related to this Agreement* . . . whether in tort or contract or at law or in equity, shall be brought in a state or federal court sitting in the County of Orange." (Italics added.)

Section 15.4, the section where the arbitration language appears, concerns only procedures for terminating the Agreement in the event of a material breach, and specifically provided the only powers the arbitrator would have related to determining if there was a breach and if the breach was cured. It provided that in "a *dispute over whether a breach has occurred*" the parties were to "try in good faith to settle the [breach of contract] dispute by mediation . . . *before resorting to arbitration, litigation, or some other dispute resolution procedure*." (Italics added.) Mediation was not mandatory, but encouraged by the next sentence of section 15.4 that if any party refused to participate in mediation, the other party "shall be entitled to recover fees and costs in *any ensuing proceeding*," again, with no limitation of "*proceedings*" to arbitration. (Italics added.) Section 15.4 went on to provide, "In the event such mediation does not resolve the dispute [over whether there was a breach], *either party may deliver a copy* thereof to the [AAA] . . . for binding arbitration. . . ." (Italics added.) But there is no explanation of *what* is to be delivered to the AAA, and the Agreement appears to presuppose that arbitration would only follow mediation *if* mediation occurred, and does not clearly indicate arbitration is mandatory.

10

In short, section 15.4 is not a clear agreement to arbitrate any and all controversies arising between the parties.  Rather, as drafted, it lays out an alternative method of resolving the narrow issue of whether there is an uncured material breach.  Moreover, the section mentioning arbitration does not bind any party to submit any controversy to arbitration.  Thus, there is no clear and unequivocal agreement to waive the right to a court trial of controversies between the parties (*Wolschlager*, *supra,* 111 Cal.App.4th at p. 789; *Badie, supra,* 67 Cal.App.4th at p. 805; *Titan*, *supra,* 164 Cal.App.3d at p. 1129), and accordingly, the trial court correctly construed the provision as optional, not mandatory.

## DISPOSITION

The order is affirmed.  Respondent is awarded costs on appeal.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


BEDSWORTH, J.

11