Filed 3/30/16  Cardiology Specialists Medical Group v. Rangappa CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CARDIOLOGY SPECIALISTS MEDICAL GROUP, INC.<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SUNIL RANGAPPA,<br><br>    Defendant and Appellant,<br><br>RIVERSIDE HEALTHCARE SYSTEM, L.P.,<br><br>    Defendant and Respondent. | D069092<br><br><br>(Super. Ct. No. RIC1301261) |

APPEAL from a judgment of the Superior Court of Riverside County, Dallas S. Holmes, Judge.  Affirmed.

Ardent Law Group, Stephen Dennis Johnson and Hubert H. Kuo for Defendant and Appellant.

Ward & Ward and Alexandra S. Ward for Plaintiff and Appellant.

Theodora Oringher, Todd C. Theodora and Suzanne Cate Jones for Defendant and Respondent.

Dr. Sunil Rangappa and his former employer, Cardiology Specialists Medical Group, Inc. (CSMG) agreed to binding arbitration to determine who, as between them, would be liable for paying Riverside Community Hospital (RCH) amounts owed for Rangappa's early termination of a Physician Recruiting Agreement (PRA).  CSMG prevailed at arbitration.  The trial court confirmed the arbitration award in part and entered judgment in CSMG's favor, correcting the award only as to the arbitrator's award attorney's fees to CSMG.  Rangappa appeals the confirmation of the arbitration award, and CSMG appeals on the limited issue of attorney's fees.  We affirm.

I.

FACTUAL SUMMARY

This dispute arises from an employment relationship between Rangappa, a cardiologist, and his employer, CSMG.  CSMG terminated Rangappa after 13 months of employment.  Thereafter, Rangappa left the Riverside area and relocated to Los Angeles.  In so doing, Rangappa breached his PRA with RCH, which required him to remain within RCH's geographic service area for 42 months.  Central to this dispute is who, as between Rangappa and CSMG, is liable for reimbursing RCH under the terms of the employment agreement between Rangappa and CSMG.

A.  *Rangappa's Employment Agreement with CSMG and Physician Recruiting Agreement with RCH*

On June 16, 2010, Rangappa and RCH executed the PRA, pursuant to which: (i) Rangappa agreed to relocate to Riverside and serve as a cardiologist in RCH's geographic service area for 42 months (the "Commitment Period"); (ii) RCH agreed to

2

"advance" Rangappa $226,626, reflecting "no more than fair market value for Physician's specialty in the Community," "as a guarantee of compensation" disbursed in monthly installments over the first 12 months of the Commitment Period (the "Guarantee Period"); (iii) RCH agreed to provide Rangappa a sign-on bonus, relocation expenses, and start-up expenses ("Non-Salary Costs"); and (iv) Rangappa agreed he would be liable for repaying RCH the sum of all compensation guarantee payments (the "Loan Repayment Amount") at the end of the Guarantee Period and executed a promissory note to that effect.

In order to encourage Rangappa to remain in the geographic area long term, RCH agreed to "forgive and cancel one thirtieth (1/30th) of Physician's Loan Repayment Amount" for each month that Rangappa continued to practice in the RCH service area after the 12-month Guarantee Period. Thus, if Rangappa practiced in the RCH service area for the full 42-month Commitment Period, he would not be required to repay any part of the Loan Repayment Amount. By contrast, if Rangappa left the RCH service area before the end of the Commitment Period, RCH was entitled to recoup the unamortized amount of total sums paid based, inter alia, on how many months Rangappa had complied with the PRA.

The PRA stated Rangappa was an independent contractor, not an employee of RCH. On June 18, 2010, Rangappa entered into a separate Employment Agreement (EA) with CSMG, a cardiology practice wholly owned by Dr. Kaustubh Patankar. Pursuant to the EA, CSMG agreed to employ Rangappa for 36 months, commencing on September 1, 2010, for a salary of $300,000 per year. The EA referenced the PRA, stating RCH would

3

provide a portion of the funds that CSMG would use to pay Rangappa's salary under the PRA. The EA stated Rangappa was only entitled to be paid once; any compensation he received directly under the PRA would be deducted from his salary from CSMG.[1]

The EA set forth duties and obligations of Rangappa and CSMG. Among other things, the EA required Rangappa to:

> (1) "render medical and surgical services for [CSMG] as determined by [CSMG]"; (2) "devote [his] full time, energy and attention to rendering services as a physician for [CSMG]"; (3) work during CSMG's "regular business hours"; (4) "provide reasonable 'on call' services" for CSMG; (5) "assist[] [CSMG] in growing its practice," particularly in Corona; (6) "provide services in other or additional geographical areas from time to time"; and (7) "at the request of [CSMG] [ ] participate in marketing efforts and serve on various boards and committees from time to time."

A failure by Rangappa to materially comply with the above provisions would constitute a material breach of the EA.

Section 4.2 of the EA contained various provisions relating to termination of employment. Relevant here, CSMG could terminate Rangappa for "just cause" under section 4.2(vii) if he "willfully refused to perform or substantially disregarded [CSMG's] orders as reasonably determined by [CSMG] in its discretion." Alternatively, CSMG could terminate Rangappa for a "material breach" under section 4.2(v), if it provided Rangappa written notice of a material breach and the breach remained uncorrected for 30

---

[1] After Rangappa joined, Patankar wrote a letter to RCH stating any remuneration under the PRA would need to be paid directly to CSMG.

days.  CSMG and Rangappa could each terminate the EA "without cause" under section 4.2(viii) by giving the other party 90-day written notice.

CSMG, Rangappa, and RCH also executed a "Recruiting into Existing Medical Practice Addendum" to the PRA, pursuant to which CSMG agreed to be "jointly and severally liable" with Rangappa to reimburse RCH under the PRA.  The EA spelled out the circumstances in which Rangappa or CSMG would be liable to RCH for repayment. Pursuant to section 3.10.1 of the EA:

> "(i)  If the Physician materially defaults in Physician's obligations under this Agreement or the [PRA], . . . or this Agreement is terminated by [CSMG] under Section 4.2 (iii) or (vii) [(for 'just cause')], then Physician shall be solely responsible and shall promptly pay all reimbursement amounts owed under the [PRA] and hold [CSMG] harmless therefrom.

> "(ii) If [CSMG] materially defaults in [its] obligations under this Agreement or the [PRA] or [CSMG] terminates this Agreement without cause, then [CSMG] shall be solely responsible and shall promptly pay all reimbursement amounts owed under the [PRA] and shall hold Physician harmless therefrom."[2]

B.  *Rangappa's Employment and Termination from CSMG*

Rangappa began working with CSMG on September 1, 2010.  On October 6, 2011, Patankar met with Rangappa and gave him a letter documenting Rangappa's alleged breaches of the EA since joining the group (Breach Letter).  The Breach Letter alleged Rangappa failed to accept additional clinic hours, see patients during regular clinic hours, and effectively market or network to grow CSMG's Corona practice and

---

2      Under limited circumstances not relevant here, Rangappa and CSMG agreed they would each be liable for "one-half of the reimbursable amount."

5

increase his billings. It described Rangappa's performance as "completely unsatisfactory" and required Rangappa to submit a corrective plan within 48 hours.

Rangappa did not respond to the Breach Letter.[3] On October 14, 2011, CSMG sent Rangappa a letter terminating him under the "without cause" provision of the EA (Termination Letter), stating:

> "[A]lthough the Group believes that you have breached the terms of your Employment Agreement and that sufficient basis exists to terminate your employment for cause under the provisions of Section 4.2(v) [(material breach)] and 4.2(vii) [(just cause)] of that Agreement, the Group has elected to terminate your employment without cause, pursuant to the provisions of Section 4.2(viii) [(without cause)] instead."

Consistent with the EA's "without cause" termination provision, CSMG asked Rangappa to continue working with the group for 90 days, until January 12, 2012.

C. *Rangappa's Post-Termination Efforts and Breach of the PRA*

On October 30, 2011, Rangappa wrote to Patankar stating that he viewed his "without cause" termination as "unjustified, improper and without merit" but would need to notify RCH. Rangappa sent a letter to RCH that same day.

On December 15, 2011, Rangappa sent a letter to RCH, stating he had been unable to secure employment within the RCH service area and was consequently "forced to broaden [his] search for new employment beyond the contractual zone established in the [PRA]." Rangappa stated he would terminate his performance under the PRA on January

---

3    Rangappa testified at arbitration that he was in the process of retaining a lawyer and drafting his response to the Breach Letter when CSMG terminated him.

28, 2012, or sooner if RCH would allow it, in order to align dates with his last day at CSMG.

On January 12, 2012, CSMG sent Rangappa a letter declaring his work to be "up-to-date and satisfactory/ completed." In August 2012, Rangappa began working full-time as a cardiologist in Los Angeles.

## II.

## PROCEDURAL BACKGROUND

A. *Arbitration Proceedings*

In February 2012, RCH filed a Demand for Arbitration against Rangappa and CSMG, claiming it was entitled to reimbursement of $204,029.44 as a result of Rangappa's breach of the PRA. RCH, Rangappa, and CSMG entered into a Stipulated Arbitration Agreement (SAA) on June 30, 2012, pursuant to which Rangappa and CSMG admitted RCH was owed $204.029.44 plus interest but disputed which one of them was liable. Pursuant to the SAA, Rangappa and CSMG agreed to binding arbitration to decide who, as between them, would be held responsible for reimbursing RCH. [4]

The arbitration took place over two days in October 2012. The arbitrator heard testimony from Patankar, Dr. Mimi Biswas, and Mr. Jeffrey Savage from CSMG; Mr. Benedict Russo and Ms. Christina Reid Brown from RCH; and Rangappa. Rangappa and CSMG submitted documentary evidence, including e-mails and summaries of billings and procedures by different cardiologists in the group.

---

[4] The SAA also provided for expanded judicial review, as discussed in the discussion section.

7

The parties offered conflicting testimony about Rangappa's tenure at CSMG. CSMG's witnesses testified to Rangappa's lack of team effort, low billings, inadequate networking and marketing, and his perceived unwillingness to accept additional hours or patients. Several of CSMG's witnesses expressed that, in comparison to other physicians in the group, Rangappa's productivity (in terms of patients and billings) was low. By contrast, Rangappa testified about various efforts he took to network with potential referring doctors and market CSMG's Corona practice. He denied refusing additional clinic hours or on-call time and suggested it was unreasonable to compare his productivity, as a newly entering non-interventionist cardiologist, with that of Patankar, an interventionist cardiologist with 20 years of experience in the community. Rangappa conceded he understood in signing the EA that he would be liable to reimburse RCH if he materially breached the EA, but he denied any such breach. Patankar conceded that, despite other shortcomings, Rangappa provided CSMG's patients with adequate medical care and was not terminated on that basis.

The arbitrator submitted the award in December 2012, concluding that as between CSMG and Rangappa, Rangappa was solely liable for reimbursing RCH. The arbitrator concluded Rangappa "materially breached" his obligations under the EA to "(i) provide medical services for the Group as determined by the group, and (ii) assist the Group to grow its practice," by:

- Refusing to join the internal medicine/ cardiology call panels at Parkview Community Hospital and Corona Regional Medical Center;
- Refusing to work additional clinic hours requested by CSMG;

8

- Refusing to assist Dr. Patankar in seeing his patients on grounds that he, too, was busy;

- Making insufficient efforts to work with Dr. Tarek Mahdi, a family physician identified by CSMG as a likely referral source to grow its Corona practice;

- Failing to attend two scheduled meetings with Dr. Mahdi, causing Dr. Mahdi to lose interest in working with Rangappa; and

- Failing to attend internal medicine section meetings, where he could have marketed his practice.

The arbitrator concluded CSMG was entitled to terminate Rangappa immediately for "just cause" under the EA and that Rangappa was, in fact, terminated for cause. However, the arbitrator concluded CSMG "characterized the for cause termination as without cause," for reasons benefiting both parties, but especially Rangappa; the "without cause" characterization afforded Rangappa the opportunity to continue working for 90 days at $25,000 per month in lieu of immediate unemployment and search for work without the stain of a "just cause" termination on his record. The arbitrator rejected Rangappa's equitable arguments, stating that to find his termination "without cause" would "place form over substance and inequitably shift liability to [CSMG]."

The arbitrator further concluded Rangappa materially breached the PRA by leaving the service area within the Commitment Period. He determined Rangappa failed to pursue employment opportunities in the area, noting that he could have complied with the PRA by taking two days per week of on-call duty in the RCH service area. The arbitrator concluded the PRA and EA were separate agreements and that, despite his

9

termination from CSMG in October 2011, Rangappa did not breach the PRA until he wrote to RCH on December 15, 2011, stating he would leave the service area before the end of the Commitment Period. Thus, finding Rangappa in material breach of the EA and PRA, and determining that CSMG terminated Rangappa for just cause, the arbitrator concluded Rangappa was solely liable for reimbursing RCH $182,665.93 in guarantee payments (with interest), pursuant to section 3.10.1(i) of the EA, as well as $28,201.19 in Non-Salary Costs (with interest).

On January 25, 2013, following CSMG's motion, the arbitrator submitted a Modified Arbitration Award (MAA). The MAA differed from the original award in only one respect: the arbitrator ordered Rangappa to pay CSMG $52,131.00 in attorney's fees and $3,765.30 in costs. Although the arbitration arose under the PRA, which did not contain an attorney's fee provision, the arbitrator ruled that section 9.6 of the EA authorized reasonable attorney's fees to "the prevailing party in any action brought to enforce or interpret the Employment Agreement" and that Rule R-43(d)(ii) of the American Arbitration Association (AAA) conferred power to award attorney's fees.

B. *Superior Court Petitions*

CSMG initiated this action in February 2013 by filing a petition to confirm the MAA.[5] Rangappa filed for bankruptcy under Chapter 13 on February 8, 2013 (Case No. 2:13-bk-13413-SK (E.D. Cal. 2013)), resulting in an automatic stay of proceedings. The bankruptcy court lifted the stay on April 24, 2013.

---

[5]    RCH filed a statement of non-opposition to CSMG's petition.

In May 2013, Rangappa filed a petition to correct or vacate the MAA, raising for the first time alleged violations of the Labor Code. Rangappa contended the payment arrangement under the PRA and EA constituted an "illegal loan wherein CSMG . . . would borrow most of the wages it then paid to [Rangappa]" and, through arbitration, "cause [Rangappa] to repay the loan which constitutes a rebate of his wages in violation of California [L]abor Code [section] 221." He argued the PRA and EA were illegal contracts based on an illegal bargain and failed for lack of consideration to Rangappa. Rangappa reasserted equitable arguments of promissory estoppel and waiver raised at arbitration, based on the Termination Letter's "without cause" language. Rangappa also claimed CSMG breached the EA by failing to abide by its "without cause" termination. In addition, Rangappa argued RCH was not a party to the arbitration, rendering the arbitrator's award to RCH improper. Finally, he challenged the award of attorney's fees and costs, stating that there was no language in either the PRA or SAA that required Rangappa to submit the issue of attorney's fees and costs to arbitration.

On July 15, 2013, Rangappa filed a "Request for Statement of Decision." This request copied, almost verbatim (except for three paragraphs), his petition to correct or vacate the MAA.

The trial court requested supplemental briefing to address how the arbitrator reconciled the "without cause" Termination Letter with CSMG and Rangappa's reimbursement liability under section 3.10.1(i) of the EA. Both parties submitted supplemental briefing on September 4, 2013.

11

At the contested hearing, the trial court heard argument from CSMG and Rangappa. Counsel for Rangappa asked the court about his request for a statement of decision, but the court stated: "This is not a matter for a statement of decision, sir, this is a motion." As to Rangappa's citation to the Labor Code, the court held Rangappa could not claim errors of law based on issues that were never raised before the arbitrator. The court also rejected Rangappa's remaining theories, holding he had failed to meet his burden to show that the arbitrator committed an error of law. The court granted in part CSMG's petition to confirm the MAA, taking the issue of attorney's fees under submission, and denied Rangappa's petition to vacate. The court asked the parties to submit AAA Rules 42 and 43, to determine whether the MAA's award of attorney's fees to CSMG was proper.

CSMG submitted a copy of the AAA rules. Pursuant to Rule 43, an arbitration award may include "an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." In October 2013, the trial court held attorney's fees could not legally be awarded in this action. The court granted CSMG's petition to confirm the MAA, except as to the award of attorney's fees, and denied Rangappa's petition to vacate the MAA. The court entered judgment ordering Rangappa to pay $213,488.13 to RCH (consisting of compensation guarantee payments, non-salary costs, and interest), plus costs and reimbursement for administrative arbitration fees.

12

C. *Issues on Appeal*

Rangappa filed a notice of appeal in December 2013. He challenges the trial court's confirmation of the MAA on grounds that: (i) the MAA violates the Labor Code, constitutes an illegal bargain, and is contrary to public policy by making Rangappa repay his wages to RCH; (ii) CSMG breached the EA by failing to abide by its "without cause" termination and is barred on equitable grounds from claiming his termination was for "just cause"; and (iii) RCH is not a party to the arbitration and should not have been awarded recovery. Rangappa argues that for these reasons, the arbitrator committed errors of law, exceeded his powers, and the MAA is a miscarriage of justice. Rangappa also argues the trial court erred by denying his request for a statement of decision pursuant to Code of Civil Procedure sections 632 and 1291.

CSMG appeals on the issue of attorney's fees. CSMG argues the trial court erred in striking the MAA's award of attorney's fees to CSMG. RCH joins in CSMG's arguments and argues that pursuant to the SAA, it was proper for the arbitrator to award recovery in RCH's favor.

III.

DISCUSSION

Much of this appeal is resolved by the applicable standard of review. Rangappa asks this Court to substitute its view of the evidence for the arbitrator's. However, even if we presume the SAA expands the scope of judicial review, Rangappa fails to meet his burden to show the arbitrator committed errors in law or fact or otherwise exceeded his

13

powers.  Moreover, as we discuss, Rangappa cannot raise illegality or public policy arguments that were not raised before the arbitrator in the first instance.

As to CSMG's appeal, we conclude the arbitrator lacked authority under the parties' arbitration agreement to award attorney's fees to the prevailing party.  We also conclude the trial court did not abuse its discretion in denying CSMG attorney's fees on its petition to confirm the MAA.

A.  *Rangappa's Appeal*

1.  *Legal Principles*

Judicial review of private, binding arbitration awards is extremely narrow.  The Legislature enumerated limited grounds for vacation (Code Civ. Proc., § 1286.2) and correction (Code Civ. Proc., § 1286.6), and " '[a]n error of law is not one of the grounds.' "  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 14 (*Moncharsh*).)  Judicial review is limited to the enumerated statutory grounds in Code of Civil Procedure sections 1286.2 and 1286.6.  (*Id.* at pp. 27-28.)  *Moncharsh* rejected an earlier line of cases suggesting that an award could be vacated for errors of law appearing on the face of the award and causing substantial injustice.  (*Id.* at p. 6.)  The Supreme Court acknowledged the risk that an arbitrator could make a mistake but explained that such risk is acceptable because it affords the parties the benefit of their bargain for a "quick, inexpensive, and conclusive resolution to their dispute."  (*Id.* at p. 11.)  Moreover, the Legislature reduced this risk by providing limited statutory grounds for vacating or correcting an award.  (*Id.* at p. 12.)

14

Most of the enumerated grounds for vacation and correction address "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh, supra,* 3 Cal.4th at p. 12.)  "[C]ourts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by corrupt arbitrators; (3) affected by prejudicial misconduct on the part of the arbitrators; or (4) in excess of the arbitrators' powers." (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1344 (*Cable Connection*); see Code Civ. Proc., § 1286.2.)  But, as *Moncharsh* explained, " 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' " (*Moncharsh,* at p. 28.)  "A contrary [rule] would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers." (*Ibid.*)  Therefore, as long as the issue was within the scope of the controversy submitted for arbitration, arbitrators do not exceed their powers by rendering an erroneous decision on a legal or factual issue. (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775.)[6]

One of the ways in which arbitrators may exceed their powers is by enforcing an illegal contract. (*Moncharsh, supra,* 3 Cal.4th at p. 31.)  Judicial review of an arbitration award may be available where a party contends the underlying contract or the resulting award is illegal or contrary to public policy.  However, in order to preserve such an

---

[6]    As the Supreme Court explained in *Moncharsh*, "it is within the 'powers' of the arbitrator to resolve the entire 'merits' of the 'controversy submitted' by the parties. [Citations.]  Obviously, the 'merits' include all the contested issues of law and fact submitted to the arbitrator for decision.  The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." (*Moncharsh, supra,* 3 Cal.4th at p. 28.)

15

argument, the party must raise it before the arbitrator in the first instance, as we discuss further below. (*Moncharsh,* at pp. 30-31.)

*Moncharsh* is premised on the notion that arbitration is "a matter of agreement between the parties," wherein the arbitrator's powers are " ' "limited and circumscribed by the agreement or stipulation of submission." ' " (*Moncharsh, supra,* 3 Cal.4th at p. 8.) "By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of the bargain." (*Id.* at p. 10.)

Because this rule derives from contract, it follows that parties may expressly agree to accept a broader scope of judicial review in their arbitration agreement. In *Cable Connection*, the Supreme Court held that parties may "take themselves out of the general rule that the merits of the award are not subject to judicial review" by "clearly agree[ing] that legal errors are an excess of arbitral authority that is reviewable by the courts." (*Cable Connection, supra,* 44 Cal.4th at p. 1361.) The parties in *Cable Connection* agreed the arbitrators would not have "the power to commit errors of law or legal reasoning" and that the award could "be vacated or corrected on appeal to a court of competent jurisdiction for any such error." (*Id.* at p. 1340.) The Supreme Court concluded this language expanded the permissible scope of judicial review by the trial court on a petition to vacate. (*Id.* at p. 1361.)

Here, as in *Cable Connection*, the parties agreed in the SAA that errors of law or fact would exceed arbitral authority and provide grounds for vacation or correction:

> "The Parties agree that with respect to the Liability Dispute, the
> Arbitrator shall not have the power to commit (a) errors of law or
> legal reasoning, (b) errors of fact, and/or (c) errors with regard to

16

mixed questions of law and fact. In addition, the Parties agree that the Arbitrator shall not have the power to render an award that is (i) not based on substantial evidence presented at the proceeding, (ii) based on evidence not presented at the hearing, and/or (iii) not in conformity with the substantive and procedural law of the State of California. If the Arbitrator exceeds any of the foregoing specific powers, or limitations of power, then the written award issued by the Arbitrator pursuant to paragraph 4 a above, may be vacated and/or corrected by filing a petition pursuant to Code of Civil Procedure sections 1285 *et seq* in the Superior Court in and for the County of Riverside, State of California."

The parties agreed that on filing a petition, the Superior Court could correct or vacate an award:

"on any of the grounds stated in Code of Civil Procedure sections 1286.2 and/or 1286.4 and, in addition, on the grounds that the award is the result of an error of law, an abuse of discretion, and/or is not supported by substantial evidence as those terms are defined by California appellate law or is otherwise the result of the Arbitrator's failure to comply with the terms and condition of this paragraph."

The parties further agreed to appellate review of *both* the trial court judgment and the arbitration award "on the merits":

"Notwithstanding the existence of any statutory or case law to the contrary, the Parties hereby expressly stipulate and agree that the Court of Appeal may review the Judgment and the underlying Arbitrator's award 'on the merits' for any and all error, including errors of law, abuses of discretion, and/or a lack of support by substantial evidence as those terms are defined by California appellate law, applying the standards and procedures applicable to the appeal of any judgment or order issued by a state court in a civil action pursuant to Code of Civil Procedure sections 901, *et seq.*"

Pursuant to *Cable Connection*, this language expanded the permissible scope of judicial review by the trial court to permit de novo review of the MAA for alleged errors of law and review for substantial evidence for alleged errors of fact. (See, e.g., *Cable*

17

*Connection, supra,* 44 Cal.4th at pp. 1364-1366 [applying de novo review to review arbitrators' errors of law].)

However, the SAA's provisions quoted above do not relieve Rangappa, as the party moving to vacate the award, of the burden to establish grounds for vacation. (See *Lopes v. Millsap* (1992) 6 Cal.App.4th 1679, 1685 ["the burden is on the party attacking the award to affirmatively establish the existence of error"]; *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 826 [party moving to vacate arbitration award bears the burden of showing error]; *Turner v. Cox* (1961) 196 Cal.App.2d 596, 603 ["Every reasonable intendment will be indulged to give effect to arbitration proceedings . . . ."].) Likewise, although the SAA provides for appellate review of the arbitration award "on the merits," it does not change the appellate jurisdiction of this Court. (See *Cable Connection, supra,* 44 Cal.4th at p. 1362 [arbitration agreements, like all contracts, "are limited in the constraints they may place on judicial review"].)[7]

Guided by these principles, because the trial court did not make any findings of fact in confirming the MAA, we review de novo the propriety of the trial court's judgment confirming the award. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*); *Cooper v. Lavely & Singer*

---

[7] As Justice Moreno noted in his partial concurrence in *Cable Connection*: "Although arbitration is created by contract, and the terms of the arbitration are dictated by contractual provisions, courts are not parties to arbitration agreements, and they are not bound by their terms. Parties can agree that a legal dispute arising from their arbitration will be settled by the California Supreme Court, but this court is not bound by that agreement." (*Cable Connection, supra,* 44 Cal.4th at p. 1368 (conc. & dis. opn. of Moreno, J.)

18

*Professional Corporation* (2014) 230 Cal.App.4th 1, 11-12 ["To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo."].)  That is, we review independently of the trial court whether the arbitrator exceeded the authority granted to him under the SAA or committed errors of law or fact.

2. *Rangappa Waived Any Argument Not Raised During Arbitration*

In his petition to vacate the MAA, Rangappa argued for the first time before the trial court that the compensation arrangement under the EA and PRA violates Labor Code section 221, constitutes an illegal bargain, and violates public policy by effectively making Rangappa repay the majority of his first 12 months of wages from CSMG to RCH.  The trial court held it could not hear these arguments because Rangappa had not raised them before the arbitrator in the first instance.  This was correct.  (*Moncharsh, supra,* 3 Cal.4th at pp. 30-31.)

In *Moncharsh*, an attorney appealed from the trial court's entry of judgment confirming an arbitration award in favor of his former employer.  The attorney argued, inter alia, that the fee-splitting provision of his employment agreement was illegal and violated public policy.  The Supreme Court addressed this matter on review *only* because the attorney had raised it before the arbitrator.  As the court explained:

> "The issue would have been waived, however, had Moncharsh failed to raise it *before the arbitrator*.  Any other conclusion is inconsistent with the basic purpose of private arbitration, which is to finally decide a dispute between the parties.  Moreover, we cannot permit a party to sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award.  A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration.'

19

[Citations.] . . . [¶] . . . Failure to raise the claim before the arbitrator . . . waives the claim for any future judicial review." (*Moncharsh, supra,* 3 Cal.4th at pp. 30-31.)

Although the Supreme Court held in *Cable Connection* that parties may contractually agree to expanded judicial review (*Cable Connection, supra,* 44 Cal.4th at p. 1361), nothing in *Cable Connection* affects the rule in *Moncharsh* that issues not raised before the arbitrator are waived for future judicial review. In raising illegality and public policy arguments, Rangappa seeks to undo the agreement he made in the SAA that he was jointly and severally liable with CSMG for amounts due to RCH under the PRA. This is the very " 'procedural gamesmanship' " that *Moncharsh* cautions against. (*Moncharsh, supra,* 3 Cal.4th at pp. 30-31; see *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110 ["Company may not agree to arbitrate a question and then, if the decision goes against it, litigate the question in another proceeding."].) By failing to raise illegal bargain, Labor Code, or public policy arguments before the arbitrator, Rangappa waived these arguments for judicial review.[8]

---

[8]     Rangappa cites *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 and *Lindenstatt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, but those cases challenged the legality of the entire contract. As *Moncharsh* recognized, cases like *Loving & Evans* are not relevant where, as here, a party claims a "single provision of the overall employment contract" is illegal. (*Moncharsh, supra,* 3 Cal.4th at p. 32; see *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 36 ["As in *Moncharsh,* and in contrast to *Loving* and *Linderstadt,* the alleged illegality in the instant case does not infect the entire

3. *Rangappa Fails to Show Error on His Contract and Equity Theories*

Rangappa's remaining arguments attempt to re-litigate the very subject of the arbitration. Rangappa argues CSMG breached the EA by failing to abide by its "without cause" termination. He also makes equitable arguments, claiming CSMG waived its argument that Rangappa was terminated without cause and that CSMG is barred under promissory estoppel from claiming Rangappa's termination was for "just cause." Each of these arguments rests on the same theory: that CSMG terminated Rangappa "without cause" and therefore became solely liable for reimbursing RCH under section 3.10.1 of the EA.

The trial court requested supplemental briefing to understand how the arbitrator reconciled Rangappa's "without cause" Termination Letter with section 3.10.1 of the EA. At the September 12, 2013 hearing, the court concluded Rangappa had not met his burden show any error of law in the arbitrator's decision. We agree. As the party claiming error, Rangappa bears the burden to demonstrate the existence of error (*Lopes v. Millsap, supra,* 6 Cal.App.4th at p. 1685), which he fails to do.

In relevant part, section 3.10.1(i) of the EA held Rangappa solely responsible for repayment if he materially defaulted under the EA or PRA *or* were terminated for "just

contract . . . . Therefore, the exception enunciated in *Loving* and *Lindenstadt* . . . is not applicable."].) Rangappa also cites *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405, but that case does not help him. In *Cotchett*, the court held that procedural and substantive unconscionability are *both* required for a court to refuse to enforce a contract. Finding neither in the contingency fee agreement, the court rejected the public policy argument and affirmed the trial court's confirmation of an arbitration award. (*Id.* at p. 1420-1421.) There is nothing in the record to support procedural unconscionability in Rangappa's negotiation of the PRA and EA.

21

cause." Section 3.10.1(ii) held CSMG solely responsible for repayment if it terminated Rangappa "without cause." There is no dispute that Rangappa left the RCH service area within the Commitment Period and materially defaulted under the PRA. Thus, at best, Rangappa's argument boils down to the notion that subdivisions (i) and (ii) of section 3.10.1 simultaneously applied. Even if we accept that premise, that circumstance does not render the arbitrator's decision to hold Rangappa liable under 3.10.1(i) an "error of law" or beyond the arbitrator's powers so as to entitle us to question the arbitrator's interpretation of subdivisions (i) and (ii).

Moreover, the arbitrator determined that CSMG bore no repayment liability under section 3.10.1(ii). CSMG's October 14, 2011 Termination Letter to Rangappa stated: "although the Group believes that you have breached the terms of your Employment Agreement and that sufficient basis exists to terminate your employment for cause under the [material breach and just cause provisions] of that Agreement, the Group has elected to terminate your employment without cause." The arbitrator considered testimony and documentary evidence, including CMSG's October 6, 2011 Breach Letter and testimony from Patankar, Biswas, Savage, and Rangappa to assess Rangappa's employment and termination, including the effect of the "without cause" language in the Termination Letter. On the basis of this evidence, the arbitrator concluded Rangappa "materially breached" his obligations under the EA to "(i) provide medical services for the Group as determined by the Group, and (ii) assist the Group to grow its practice." The arbitrator concluded Rangappa was terminated with cause for purposes of repayment liability to RCH, despite the Termination Letter's "without cause" language, and that "for reasons

22

that benefitted both parties, but especially benefited Dr. Rangappa, [CSMG] characterized the for cause termination as without cause."

The arbitrator compared the EA and PRA and concluded they were separate agreements conferring distinct legal obligations. For example, the EA covered a 36-month period, whereas the PRA covered a 42-month period. Given how the EA and PRA were structured, the arbitrator concluded CSMG was merely a "guarantor" for Rangappa under the PRA, whereas Rangappa was the primary obligor. The arbitrator found Rangappa breached the PRA after his termination from CSMG and that he knew he could have fulfilled his obligations under the PRA after his termination by accepting two call days per week in the service area. These findings led the arbitrator to conclude Rangappa alone, and not CSMG, bore repayment liability under section 3.10.1 of the EA.[9]

To the extent the parties' arbitration agreement permits judicial review of the MAA for errors of law or fact (*Cable Connection, supra,* 44 Cal.4th at p. 1361), Rangappa fails to demonstrate any such error.[10]

---

[9] Rangappa testified at arbitration that he understood in signing the EA that if he materially breached that agreement, he would be responsible for repaying RCH under the PRA. His defense at arbitration was that he did not breach, a premise rejected by the arbitrator on the basis of the evidence presented.

[10] The SAA provided that the arbitrator lacked power to commit errors of law, errors of fact, and/or errors of mixed questions of law and fact. It allowed the Superior Court to vacate for such error and provided for appellate review "on the merits." *Cable Connection* held that parties may expand the scope of judicial review to encompass errors of law. (*Cable Connection, supra,* 44 Cal.4th at p. 1361.) Although we have not located a case on point, we apply *Cable Connection's* reasoning to permit judicial review of an award for factual findings lacking substantial evidence.

23

Rangappa's contends CSMG breached the EA by failing to abide by its "without cause" termination and hold Rangappa harmless. However, even if we were to presume that conflicting factual inferences might have been drawn from the Termination Letter's "without cause" language, that would not provide a basis for determining that the arbitrator committed *legal* error in resolving those inferences in CSMG's favor. Rangappa presents no authority to find legal error based on the arbitrator's weighing of CSMG's evidence over Rangappa's conflicting evidence. Rangappa likewise does not suggest that the arbitrator applied an incorrect standard or misapplied general rules of contract interpretation.[11] To the contrary, the arbitrator's decision respects general rules of contract interpretation, by interpreting section 3.10.1 of the EA in a manner that harmonized subdivisions (i) and (ii). (See Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."]; Civ. Code, § 1652 ["Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract."].)

Rangappa's estoppel theory fails because he does not show reliance or causation. "The essence of an estoppel is that the party to be estopped has by false language or conduct 'led another to do that which he [or she] would not otherwise have done and as a result thereof that he [or she] has suffered injury.' " (*State Compensation Ins. Fund v.*

---

[11] Rangappa appeared to argue for the first time at the September 12, 2013 hearing that the arbitrator committed error by invoking equitable principles to interpret section 3.10.1 of the EA. He cited no authority to support this argument below and does not raise this argument on appeal.

24

*Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 16.)  The arbitrator concluded the characterization of Rangappa's termination as "without cause" worked to Rangappa's benefit.  Rangappa admitted as much at arbitration, testifying he continued working for CSMG for 90 days after the Termination Letter because he otherwise faced immediate termination.  Moreover, promissory estoppel requires that the claimed damages were *caused by* the other party's breach.  (*US Ecology, Inc. v. State* (2005) 129 Cal.App.4th 887, 904.)  Here, Rangappa's termination did not cause his damages; his early termination of the PRA did.[12]

Rangappa's waiver argument also fails.  "Waiver is the intentional relinquishment of a known right."  (13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 193, p. 533.)  "The pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right."  (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 60.)  " 'The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver." ' "  (*Ibid.*)  Rangappa did not materially breach the PRA until months after CSMG's Termination Letter.  Rangappa therefore fails to show that CSMG intentionally relinquished a *known* right of reimbursement liability when it characterized his

---

12    To the extent Rangappa argues estoppel based on CSMG's "election of remedies," this argument fails for the same reason that Rangappa does not show  "substantial prejudice" from CSMG's characterization of his termination as without cause.  (*Baker v. Superior Court* (1983) 150 Cal.App.3d 140, 145.)

termination as "without cause." This is particularly so given the arbitrator's finding that CSMG had in fact terminated Rangappa for just cause.[13]

Finally, Rangappa fails to demonstrate any factual findings that were erroneous or lacking in sufficient evidence. Rangappa asks this Court to substitute its view of the evidence for the arbitrator's. This we cannot do: on review for sufficient evidence, it is of no consequence whether a reviewing court may have drawn different reasonable inferences or reached a contrary result. "When a finding is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence in the record, contradicted or uncontradicted, that will support the finding. When two or more inferences can be reasonably deduced from those facts, the reviewing court has no power to substitute its deductions for those of the fact finder." (*Associated Builders and Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 374.) There is substantial evidence to support the MAA.

4. *Rangappa's Argument that RCH Was a Nonparty Lacks Support*

Rangappa argues the arbitrator acted in excess of his powers by awarding recovery to RCH because RCH was not a party to the arbitration between CSMG and Rangappa. Rangappa suggests the MAA should be corrected by deleting the award to the hospital.

_____

[13]    Rangappa's equity arguments also fail because the arbitrator found he materially breached the EA and had unclean hands. It is well settled that "[o]ne who comes into equity must come with clean hands." (13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 9, p. 289.) "This maxim is far more than a mere banalily. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.* (1945) 324 U.S. 806, 814.)

This record belies his argument. Pursuant to the SAA, Rangappa and CSMG "admit[ted] that the sum of $204,029.44 is due and owing to the Hospital" but submitted to binding arbitration to settle the dispute "as to which of them is responsible for making payment to the Hospital." Both parties agreed RCH "shall be entitled to perfect the arbitration award with the Superior Court and enforce Hospital's judgment against the responsible party or parties." They further agreed that if there was an appeal from the trial court's entry of judgment confirming the arbitration award, "that appeal shall not prevent the Hospital from perfecting and enforcing its arbitration award." The arbitrator did not exceed his powers by awarding recovery to RCH in the MAA.

5. *The Trial Court Properly Denied Rangappa's Request for a Statement of Decision*

Rangappa contends the superior court erred by failing to provide a statement of decision. We disagree.

Code of Civil Procedure section 1291 provides that a court "shall" issue a statement of decision whenever it makes an appealable order or judgment, if the request complies with the requirements of Code of Civil Procedure section 632. An order granting a petition to confirm and denying a petition to vacate an arbitration award is an appealable order. (Code Civ. Proc., §1294, subd. (b).)

A statement of decision explains the factual and legal basis for the court's decision. (Code Civ. Proc., § 632.) Code of Civil Procedure section 632 directs courts to provide a properly requested statement of decision only "upon the trial of a question of fact by the court." "Where the issue is one of law only, findings of fact are not required." (*Painters*

27

*Dist. Council No. 33 v. Moen* (1982) 128 Cal.App.3d 1032, 1042.)  "The general rule is that [Code of Civil Procedure] section 632 does not require a statement of decision after a ruling on a motion."  (*Gruendl v. Oewel Partnership, Inc*. (1997) 55 Cal.App.4th 654, 660.)  "There is a very limited exception to this rule.  A statement of decision may be required on a motion ruling where the motion was in the nature of a 'trial' of fact issues."  (*City of San Diego v. Rancho Penasquitos Partnership* (2003) 105 Cal.App.4th 1013, 1044.)  Code of Civil Procedure section 1291 must be read together with Code of Civil Procedure section 632: if a petition or motion raises only questions of law, findings are not required.  (See *Charlton Co. v. Aerfab Corp*. (1976) 56 Cal.App.3d 808, 813; *Johnston v. Security Ins. Co.* (1970) 6 Cal.App.3d 839, 844, fn. 3; *Allstate Ins. Co. v. Orlando* (1968) 262 Cal.App.2d 858, 867.)

Rangappa points to his filing on July 15, 2013 of a document titled, "Request for a Statement of Decision."  However, this filing was a near-replica of his petition to vacate. Rangappa failed at any point to identify the principle contested factual issues that could be resolved by the trial court through a statement of decision.

Rangappa cites *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 688, but that case merely stands for the general rule that a statement of decision may be required where a motion raises factual issues in the nature of a trial.  *Metis* held the trial court erred by failing to provide a statement of decision requested on a motion to compel arbitration.  The court explained that the trial court would need to "weigh credibility and the strength of competing evidence" in addressing factual issues on the motion to compel, "such as whether the right to arbitrate was waived."  (*Ibid.*)  *Metis* held that "at least

28

where there is an adjudication of a question of fact by the court in deciding a petition to compel arbitration, a request for a statement of decision in the *manner* required by [Code of Civil Procedure] section 632 obligates the court to issue one." (*Ibid*.)

No similar factual issues are raised here. Rangappa argued below that his petition to vacate required "a de novo proceeding on issues of law." He makes the same contention on appeal in trying to introduce new legal theories not raised in arbitration. His "Request for Statement of Decision" was not supplemented with any declarations on which the trial court could have made factual findings. Because Rangappa failed to identify any contested factual issues that could be resolved by a statement of decision, the trial court properly denied Rangappa's request. (See, e.g., *Rebmann v. Rohde* (2011) 196 Cal.App.4th 1283, 1295 [statement of decision not required because petition to confirm the arbitration award and cross-petition to vacate was a "law and motion proceeding"].)[14]

B. *CSMG's Appeal*

---

[14]    Rangappa argues he was harmed by the trial court's denial of a statement of decision "because CSMG is asking the court of appeals to use the sanction of implied findings on RANGAPPA's appeal" and because "he has been improperly denied a procedural tool that, if used, would demonstrate that RANGAPPA should prevail in this issue." We fail to see how Rangappa suffered prejudice when his written request was a near-replica of his petition to vacate, for which the trial court made oral findings. The California Supreme Court is currently reviewing whether a court's failure to provide a statement of decision in response to a proper request requires reversal per se, without a demonstration of prejudice. (*F.P. v. Monier* (2014) 222 Cal.App.4th 1087, review granted Apr. 16, 2014, No. S216566, 322 P.3d 83.) Because we conclude Rangappa failed to make a proper request for a statement of decision, we do not address the issue of prejudice.

The MAA awarded CSMG $52,131.00 in attorney's fees and $3,765.30 in costs, citing section 9.6 of the EA and the applicable AAA Rules.[15] On review, the trial court concluded attorney's fees could not be legally awarded. CSMG argues the trial court erred in vacating the MAA's grant of attorney's fees to CSMG, claiming the EA provides for the recovery of attorney's fees by the prevailing party. CSMG also argues the trial court erred in denying CSMG's request for attorney's fees and costs for proceedings on its petition to confirm the MAA. We agree with the trial court that the arbitrator lacked authority to award attorney's fees to CSMG and conclude the trial court did not abuse its discretion in denying attorney's fees in connection with CSMG's petition to confirm.

1. *Legal Principles*

Ordinarily, an arbitrator's choice of relief "does not exceed his or her powers if it bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly, or impliedly, by the arbitrator." (*Advanced Micro Devices, supra,* 9 Cal.4th at p. 367.) That is, "arbitrators, *unless expressly restricted by the agreement of the parties*, enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, so long as the remedy may rationally be derived from the contract and the breach." (*Id.* at p. 383, italics added.)

---

15    The arbitrator cited AAA Rule R-43(d)(ii) (now R-47(d)(ii)), which states: "The award of the arbitrator(s) may include . . . an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."

Here, however, the parties stipulated in the SAA that the arbitrator lacked power to commit errors of law or fact and permitted the trial court to vacate or correct an award for such error. (See *Cable Connection, supra,* 44 Cal.4th at p. 1361 [arbitration agreement can expand the scope of post-arbitration judicial review].) Consequently, we review de novo whether the arbitrator had the legal authority to award attorney's fees to CSMG in this arbitration. (*Id.* at pp. 1364-1366 [reviewing arbitrators' alleged legal error de novo]; *Advanced Micro Devices, supra,* 9 Cal.4th at p. 376, fn. 9.) We review for abuse of discretion the trial court's denial of attorney's fees in connection with CSMG's petition to confirm the MAA. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

2. *The Arbitrator Lacked Power to Award Attorney's Fees*

This action arose because of Rangappa's early termination of the PRA. By leaving the RCH service area before the end of the Commitment Period, Rangappa materially breached the PRA. The PRA held Rangappa and CSMG "jointly and severally liable" for repayment liability to RCH. The PRA also required that "[a]ny controversy or claim arising out of or related to the Recruiting Agreement or this Addenda or any breach thereof shall be settled by mandatory binding arbitration, in accordance with the rules and procedures of alternative dispute resolution and arbitration established by . . . the commercial rules of the American Arbitration Association (AAA) . . . ." The PRA did not contain any provision allowing recovery of attorney's fees by the prevailing party.

After Rangappa's breach, RCH initiated AAA arbitration proceedings under the PRA. Rangappa and CSMG signed the SAA stipulating to arbitration. Pursuant to the

31

SAA, Rangappa and CSMG agreed to arbitrate the issue of who, as between them, was liable to RCH under the PRA. The SAA referenced the PRA, stating: "The arbitration of this matter is governed by Paragraph 17 of the Recruiting into Existing Medical Practice Addendum . . . ." The SAA did not reference the parties' separate EA. Like the PRA, the SAA did not contain any provision for recovery of attorney's fees by the prevailing party.

The parties' agreement to arbitrate is found in the PRA and SAA, neither of which contained an attorney's fee provision. "In cases involving private arbitration, '[t]he scope of arbitration is . . . a matter of agreement between the parties[,]' " and " ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission." ' " (*Moncharsh, supra,* 3 Cal.4th at p. 8.) While California law favors arbitration agreements, " ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744; see also *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 ["There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate."].) Because the parties' arbitration agreements did not provide for attorney's fees, the arbitrator lacked power to award attorney's fees to CSMG.

CSMG references section 9.6 of the EA, which allowed the prevailing party to recover reasonable attorney's fees in "any action at law or in equity, including an action for declaratory relief" that "is brought to enforce or interpret the provisions of this Agreement." CSMG also points to the AAA rules, which allowed the arbitrator to award attorney's fees if authorized by law, and Code of Civil Procedure section 1033.5, which

32

allows prevailing parties to recover attorney's fees when authorized by contract. (AAA Rule R-43 (d)(ii); Code Civ. Proc., §1033.5, subd. (a)(10)(A).) However, the entire scope of the parties' agreement to arbitrate is found in the PRA and SAA. Although the arbitrator turned to the EA to interpret the parties' liability under the PRA, the EA does not provide a basis for the recovery of attorney's fees.[16]

3. *The Superior Court Did Not Abuse Its Discretion in Denying Attorney's Fees on CSMG's Petition to Confirm the MAA*

CSMG requested $2,500 in attorney's fees incurred in connection with its petition to confirm the MAA. Pursuant to Code of Civil Procedure section 1021, except where specifically provided for by statute, the recovery of attorney's fees "is left to the agreement, express or implied, of the parties." (See also Code Civ. Proc., § 1033.5, subd. (a)(10)(A).) Because the arbitration agreement at issue between Rangappa and CSMG did not provide for the recovery of attorney's fees, we find no abuse of discretion in the trial court's denial of attorney's fees in connection with CSMG's petition to confirm the MAA. (See, e.g., *Gonzales v. Nork* (1978) 20 Cal.3d 500, 507 [trial court does not abuse

---

[16] CSMG cites *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086-1087, which holds that when two parties agree to arbitrate claims under a statute that provides for attorney's fees, that statute will override the default rule of Code of Civil Procedure section 1284.2 that each party bears its own attorney's fees. However, the only statute CSMG cites is Code of Civil Procedure section 1033.5. That statute allows recovery of attorney's fees pursuant to a contract and has no application here because the SAA did not provide for attorney's fees. Similarly, *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809, 1814-1815 does not help CSMG: in that case, real estate buyers sued to rescind a purchase agreement that contained both a clause for attorney's fees to the prevailing party *and* an arbitration clause that led to the parties' arbitration. The SAA and PRA did not contain a similar provision for attorney's fees.

33

its discretion "as long as there exists 'a reasonable or even fairly debatable justification, under the law, for the action taken' "].)

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.